STATE OF TENNESSEE ex rel. EARL MYERS

*v.*

JOHN F. BROWN, Sheriff of Jefferson County, Tennessee.

351 S. W. 2d 385.

(*Knoxville*, September Term, 1961.)

Opinion filed November 8, 1961.

HOWARD W. RHEA, Sneedville, EDWARD F. HURD, Newport, CHESTER S. RAINWATER, JR., Dandridge, for petitioner.

H. F. SWANN, District Attorney General, Dandridge, J. HOWARD COLLETT, Assistant District Attorney General, Maynardville, G. EDWARD FRIAR, Knoxville, THOMAS E. Fox, Assistant Attorney General, for respondent.

MR. JUSTICE WHITE delivered the opinion of the Court.

The relator Earl Myers filed his petition in the Circuit Court of Hancock County, Tennessee, seeking to secure his release from the custody of John F. Brown, Sheriff of Jefferson County, Tennessee, upon the theory that he was being illegally and unlawfully restrained and deprived of his liberty. The record discloses that the Sheriff of Jefferson County, Tennessee, has the relator in his custody for safekeeping under a mittimus issued by the court. The petitioner now seeks through the writ of habeas corpus to be released from confinement and set at liberty for the reasons that will be made to appear hereinafter. From the action of the trial court in sustaining the Writ the State appeals.

Earl Myers was tried along with others jointly indicted upon three indictments: the first indictment charges first degree murder of Lon Tyler; the second charges first degree murder of Alex Morris; and the third indictment charges an assault with intent to commit murder in the first degree upon the body of Verlin Maxey. Said offenses are said to have occurred in Hancock County, Tennessee, on April 22, 1961. All of the cases came on for trial in said County on September 18, 1961, and upon the completion of the proof on September 29, 1961, the jury retired to consider the guilt or innocence of all of the defendants after having been properly instructed by the trial judge.

According to the stipulation of facts in this case, the jury returned into open court at about 9:30 o'clock P.M. on September 29, 1961, when the court made the following inquiry:

"Gentlemen of the Jury, have you agreed on verdicts?

"The foreman answered: We have, Your Honor, please.

"The Court: What are your verdicts?

"The Foreman: We have them written down here, is it all right if we read them?

"The Court: Yes, any way you want to.

"The Foreman: This jury finds on circumstantial evidence Carl Myers guilty of second degree murder of Lon Tyler. This jury finds on circumstantial evidence Carl Myers guilty of second degree murder of Alex Morris. This jury finds James Horton guilty of felonious assault on Verlin Maxey. This jury finds Carl Myers guilty of assault on Verlin Maxey. This jury finds Earl Myers, Dean Myers, George Myers and E. A. Myers not guilty.

"The Court: So say you all? If so, raise your right hand. (All jurors raised their right hand.)

"The Court then made inquiry of the jury: What did you fix the punishment in these cases?

"The Foreman: Judge, we left that up to you, Your Honor.

"The Court: The court has no authority to set a sentence in this kind of case. The court can set sentence only in misdemeanor cases. Gentlemen, it is your duty to fix the punishment in the bounds set out in the charge of the court in each of these cases. I will have to let you go back and see if you can agree on that."

The jury then retired and considered further of its verdict and upon being returned into court on the same

evening they reported that they were unable to agree. The colloquy between the court and the foreman being as follows:

"The Court: Gentlemen, have you now agreed on the punishment in each case? If so,—

"Foreman: No, Sir, we cannot reach a verdict on that.

"The Court: Gentlemen, can you agree on the punishment in either of the three cases?

"Foreman: No, sir.

"The Court: Gentlemen of the Jury, I am going to have to let you go back and see if you can agree."

The jury again retired and reported at a later date on the same evening, at which time the Foreman said that he thought the jury was hopelessly deadlocked. The court then inquired:

"Well, did you agree on the punishment in the felonious assault cases?

"Foreman: No, Your Honor."

The court then ordered that the jury remain together during the night and court was adjourned until 9:00 A.M. on September 30, 1961. At this time the court made inquiry again of the jury, after they returned into open court, if verdicts had been agreed upon. The Foreman answered:

"No, Your Honor. We are in worse shape than we were yesterday and they agreed that they will withdraw any convictions or anything they said to you or anything that they had passed on and give it back to the court, and that goes for all of them.

"The Court: By that, do you mean you think there is no chance for the jury to agree?

"Foreman: No, Sir, we absolutely don't think we can agree.

"The Court: On guilt or innocence or punishment either?

"Foreman: No, sir.

"The Court: Does that apply to the defendants who were acquitted?

"Foreman: That applies to everybody, Your Honor."

The trial judge then sent the jury back to consider further and upon return to the court it again reported that it was unable to agree and the court said:

"Now, gentlemen, I have to discharge you, for counsel, on, especially for the State, the defendants don't have to agree, but it is generally agreed that you can't agree. I want to say this to you, and we must enter a mistrial. Now, as I understand it, you have not agreed as to any defendant as to any charge, is that right?

"Foreman: That's right."

It is further stipulated that on Friday night, September 29, 1961, at about 9:30 o'clock P.M. when the jury reported and stated "this jury finds Earl Myers, Dean Myers, George Myers and E. A. Myers not guilty" the trial judge entered upon the docket of the court a "not guilty" verdict as to Earl Myers, the relator, and that on Saturday, September 30, 1961, and after the jury had again reported as above set forth, the trial judge erased the "not guilty" verdict as to the relator, Earl Myers, and substituted "mis-trial".

■ It is agreed by the parties that the only question presented by this appeal from the action of the trial court in sustaining the petition for the writ of habeas corpus and discharging the relator from custody and setting him at liberty, is whether or not the first verdict announced by the jury and recorded on the judge's docket by the trial judge acquitting the relator, Earl Myers, of the criminal charges for which he was indicted and tried could be changed by the jury while it remained undischarged for the purpose of considering the punishment for the defendants that were found guilty by the jury.

It is the insistence of the relator, and so found by the trial court, that when the jury first anounced it had agreed upon verdicts, and proceeded to return a verdict of "not guilty" as to relator and each juror publicly affirming that verdict upon a poll by the trial judge that this was a legal and valid verdict acquitting the relator of all charges and that thereafter upon the jury being sent back to correct an alleged defective verdict as to other defendants it could not "retract" its verdict of "not guilty" as to the relator.

The six defendants, including relator, were put to trial on three separate indictments charging them jointly with two murders and felonious assault with intent to commit murder in the first degree. T.C.A. Sections 40-2523, 40-2524 provided for separate verdicts in the following language to-wit:

> "40-2523. *Separate verdicts as to different defendants.*—Upon an indictment against several defendants, any one or more may be convicted or acquitted."

"40-2524. *Disagreement as to part of defendants.—* In an indictment against several, if the jury cannot agree upon a verdict as to all, they may render a verdict as to those in regard to whom they agree, on which a judgment shall be entered."

■ ■ The purpose of said statutes is to provide a method by which a jury considering cases of separate defendants may render an independent and separate verdict as to each defendant. The statute provides in express terms that if the jury cannot agree upon a verdict as to all (defendants), they may return a verdict as to those in regard to whom they agree, *on which a judgment shall be entered (underscoring* ours). The question then is whether or not the jury rendered a verdict in regard to the relator. The word "verdict" is from the Latin *veredictum* meaning a true declaration. It is the formal and unanimous decision or finding made by a jury empanelled and sworn for the trial of a cause and reported to the court upon the matters of questions duly submitted to them upon the trial. *Sitterson v. Sitterson,* 191 N.C. 319, 131 S.E. 641, 51 A.L.R. 760, and other cases. The word "verdict" has also been defined as "the definitive answer given by the jury to the court concerning the matters of fact (and under Tennessee procedure matters of law under proper instruction from the court) committed to the jury for their deliberation and determination." *State v. Williams,* 89 N.J.L. 234, 98 A. 416-17.

■ ■ It is the duty of the jury to ascertain under the guidance of a judge the truth in questions of fact arising either in civil litigation or a criminal process. The jury are the judges of the facts and the law as it applies to the facts. In making up their verdict, they are to consider

the law in connection with the facts but the court is the proper source from which they are to get the law. In other words, they are judges of the law as well as the facts under the direction of the court. *Ford v. State,* 101 Tenn. 454, 47 S.W. 703.

██ When the jury shall have concluded its deliberations and reported its finding or verdict to the court and when that finding has been accepted by the court, then the duty of the jury is at an end. If the case at bar had been the only case under consideration by the jury, it would have been discharged upon the return of the verdict of ''not guilty''. Since there were other defendants and since the verdict of the jury was incomplete as to them in that their punishment had not been fixed by the jury, the trial judge very properly instructed the jury to deliberate further and determine the degree of punishment accessed by the jury against those defendants whom they had already found guilty. As to these defendants, the verdict of the jury was incomplete, but as to the relator, the verdict of the jury was complete and when accepted by the court, the relator was entitled to be released and discharged. All elements necessary in the trial of a criminal charge were present, i e., this relator was indicted, arraigned, tried and found ''not guilty'' by the jury, which verdict was accepted by the trial judge by making bench notes on the docket to this effect and then instructing the jury to consider further the punishment as to those whom the jury found to be guilty of the crimes charged.

In the case of *Grant v. State,* 33 Fla. 291, 14 So. 757, 759, 23 L.R.A. 723, the Court held:

"When the verdict is guilty as charged, where the indictment is for murder, and the statute requires the degree of the offense to be ascertained in the finding of the jury, the court may tell the jury that their verdict is not in proper form, and that they must retire, and designate in which degree they find the prisoner guilty."

To the same effect is the case of *Riley v. State*, 189 Tenn. 697, 227 S.W. 2d 32, in which the jury found the defendant guilty as charged and assessed his punishment at a fine of $100 whereupon the trial judge instructed the jury that it should fix the whole punishment including that of imprisonment if the jury thought that imprisonment was indicated in the case since the defendant had made the demand that the jury fix the entire punishment. After deliberating the jury returned into open court and stated: "We fix a fine of $200 and no jail sentence". Our Court in passing upon this case stated:

"We think the first verdict reported was not final, inasmuch as it was based upon a misconception of their duty in the premises."

In *Baldwin v. State*, 185 Tenn. 205, 204 S.W. 2d 1018, it was held:

"There is no verdict, so long as there is any uncertainty or contingency as to the finality of the determination of the jury."

The verdict of the jury in the case in which the relator was found "not guilty" was based upon an erroneous view of the duty of the jury insofar as it related to those whom they found to be guilty in that they did not assess the punishment. The judge had the right and the duty to

send the jury back to consider the punishment to be assessed by the jury.

In the case of *George v. Belk*, 101 Tenn. 625, 45 S.W. 748, it was held:

"The Court has the power, and it is his duty, when a jury offers to return an informal or insufficient verdict, to send them back to the jury room with directions to amend it and put it in proper form. And the jury may, at any time before their discharge, amend their verdict, under direction of the Court, so as to conform to the law."

It was the duty of the jury under the final instructions of the court to amend their verdict under the direction of the court so as to conform to the law. Considering this matter the jury was unable to reach an agreement as to the punishment and, therefore, a mistrial was entered as to those defendants found guilty and under the circumstances, this was the proper action to be taken by the court. As to the relator the jury had rendered a final, complete and unanimous opinion of not guilty and, therefore, had discharged their duty in full as to this defendant, and a judgment should have been entered accordingly in conformity with T.C.A. Section 40-2524.

The learned trial judge in his memorandum opinion stated: "The verdict of not guilty was reported by the jury; this was entered on the docket and the jury was specifically told that it would have to go back to the jury room to consider the question as to punishment on the cases in which the defendants were found guilty.

"The jury's report was incomplete insofar as those found guilty is concerned and as long as they did not

agree and report on the punishment it was an incomplete verdict and a mistrial could properly be entered."

We have examined the cases relied upon by the State and have referred to some of them in this opinion and as to the others we find they are not in point or are distinguishable or do not have application to the peculiar facts in this case.

The Court has been painstaking in its consideration of this case because of its serious consequences and novelty and because this is the first time the Court has been called upon to construe the sections of the Code relating to separate verdicts as to different defendants, supra. We have been unable to find upon independent inquiry and able counsel have been unable to find in the reported cases a situation analogous to the case at bar. We believe, however, that the cases cited in this opinion and the express language of the statutes aforesaid and the orderly and proper administration of justice require us to affirm the action of the trial court in sustaining the writ of habeas corpus and ordering the release and discharge of the relator Earl Myers. We believe the trial judge was eminently correct in his decision and that he was fairly and impartially fulfilling his duties as a member of the judicial system of our State in so decreeing.

The action of the trial judge, therefore, is in all things affirmed at the cost of the State, the appellant herein, and this case is remanded to the Circuit Court of Hancock County for action accordingly.