Dennis **WHITWELL** and .Forrest McClain, Petitioners,

v.

**STATE** of Tennessee, Respondent.

Supreme Court of Tennessee.

Jan. 20, 1975.

William M. Leech, Jr., Columbia, for petitioners.

R. A. Ashley, Jr., Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Nashville, M. A. Peebles, Dist. Atty. Gen., Columbia, for respondent.

## OPINION

FONES, Chief Justice.

Defendants below, Dennis Whitwell and Forrest McClain, were charged in separate indictments, with grand larceny of cattle and receiving and concealing stolen property, the same cattle. They were jointly tried. The jury requested further instructions on two occasions and returned from their deliberations the third time and reported that they could not agree. Thereupon, the following colloquy occurred between the Judge and the jury foreman:

"The Court—gentlemen, I want to ask you just a question or two, might help us and might help you, too, kind of see where we are, I'm looking at the case of Forrest McClain, have you decided whether or not Forrest McClain is guilty of grand larceny, or—

Juror—yes, sir, we got by that and we find him not guilty of that—

The Court—what about the case of Whitwell?

Juror—well, him too, both of them.

Juror—Judge, we've considered grand larceny and we've all decided that the defendants did take and load the cattle and they did have them in their trucks but we don't think they knew they were stealing at the time.

The Court—is that the verdict of all of you?

Juror—yes, sir, we can't agree on anything else.

Juror—why are you asking us here for, we've already voted; why do you want us to vote out here in front of everybody?

The Court—well, is that the finding of all the jury, as to both Whitwell and McClain?

Jurors—yes, sir.

The Court—all right—I guess we'll just have to declare a mistrial as everything else."

The trial judge's statement that he would have to declare a mistrial as to everything else (obviously everything other than grand larceny), concluded a three-day trial, on January 5, 1973. Under said date, an order was entered in the Minute Book that the jury having reported that they could not agree, was dismissed, and a mistrial entered and the case was continued to the next term of court. On January 11, 1973, defendants filed a written motion seeking the entry of a judgment of not guilty as to the offenses in the two indictments and the included offense of petit larceny. In essence, it was the contention of the defendants in said motion that the jury had returned a verdict of not guilty as to grand larceny and a verdict that the defendants did not know they were stealing at the time they took the cattle; that said verdict, as a matter of law, nullified criminal intent, an essential element of both the lesser included offense of petit larceny and the offense of receiving and concealing stolen property.

Following the hearing of said motion, on the 16th day of February, 1973, the trial judge ruled that the jury had returned a verdict of not guilty as to the offense of grand larceny, ". . . but that the offense of receiving and concealing stolen property and petit larceny being the remaining offenses within the indictment, have not been, by a jury, determined and that a mistrial as to those offenses should be declared by the court and that a certain date for the trial of the remaining offenses should be set." In a subsequent paragraph of the order, the cases were set for trial on June 19, 1973.

Thereafter, defendants filed a petition for the writs of certiorari and supersedeas in the Court of Criminal Appeals and the second trial has been continued pending action on said petition. On presentation of said petition to one member of that Court,

an order was entered directing the issuance of the writ and that the case be heard by a three-judge panel.

The theory and contention of defendants in that Court, and here, is that there was a jury verdict of not guilty of the offense of grand larceny, and that there was also a verdict exonerating them of any criminal intent, and that it follows, as a matter of law, from the facts in this case appearing in the record of the first trial which is before the Court, that they have been fully exonerated of all offenses included in the two indictments and the trial judge's order setting a date for the second trial violates the constitutional right protecting against double jeopardy.

The Court of Criminal Appeals, with one Judge dissenting, held that the writ of certiorari is not available to review said order of the trial judge; that the trial judge was not acting illegally, nor beyond his jurisdiction, and that defendants have a plain, speedy and adequate remedy by pleading double jeopardy at the beginning of the second trial; that should the trial judge overrule the plea and defendants be convicted, they could then raise the question on appeal.

Judge Russell, dissenting, held the writ available to review the issue of double jeopardy, basically for the reason that the constitutional protection against double jeopardy is intended to protect against a second trial for the same offense, as well as a second punishment. With respect to the merits of defendants' contention, the dissenting judge held that the acceptance of the verdict of not guilty to grand larceny in the context of this case was an exoneration of all charges.

We granted the writ of certiorari and heard oral argument.

The State contends, first, that the writ of certiorari cannot be employed to review defendants' contention of double jeopardy at this stage; second, that there was no jury verdict at all, and third, if there was

a verdict of not guilty as to grand larceny, the trial judge was correct in ordering a second trial on the lesser offense of petit larceny and the offense of receiving and concealing stolen property.

If defendants have been acquitted of all three charges included in the two indictments, as they contend, a second trial upon any one or more of the same charges is constitutionally impermissible, state and federal.

■ The common-law rule, the Tennessee and the United States constitutional provisions against double jeopardy protect an accused from the peril of both a second punishment and a second trial for the same offense. Ex parte Lange, 18 Wall. 163, 21 L.Ed. 872 (1874); Kepner v. U. S., 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904); Stroud v. U. S., 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919); Green v. U. S., 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); King v. State, 216 Tenn. 215, 391 S.W.2d 637 (1965).

■ It is quite apparent that if the writ of certiorari is not available to the defendants in the posture of this case, then courts in Tennessee are powerless to protect defendants from the ordeal of a second trial, unconstitutional at its inception.

In discussing the use of writ of certiorari in McGee v. State, 207 Tenn. 431, 340 S.W.2d 904 (1960), Mr. Justice Felts, writing for the Court, said:

"The phrase 'exceeded the jurisdiction conferred,' and the phrase 'acting illegally,' both refer to action by such inferior tribunal beyond, not within, its jurisdiction. Referring to the phrase 'acting illegally,' this Court, in the Hunt case, supra, said:

'Without undertaking to define that phrase of the statute with exactness or to say what it includes, we think it clear that the common-law writ, as distinguished from the statutory writ, or *certiorari* in lieu of appeal, may not

be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity.' "

We have no hesitation in holding that ordering a defendant to trial a second time in the same court, for the same offense, is an illegality that is fundamental, as distinguished from an irregularity. We are not content to say that, in Tennessee, defendants can have only one-half of the constitutional protection against double ·jeopardy; that, while we will protect them against double punishment upon their appeal· after a second trial, we have no procedural vehicle to protect against two trials for the same offense.

Appropriate here is the following statement from a Missouri case, quoted with approval in Conners v. City of Knoxville, 136 Tenn. 428, 189 S.W. 870 (1916):

"The statement that certiorari will not issue where either appeal or error goes, though frequently met with in text-writers, and in some reports, is neither strictly true nor accurate. There are marked exceptions. Thus, where the exigencies of the case are such that the ordinary methods of appeal or error may not prove adequate, either in point of promptness or completeness, so that a partial or total failure of justice may result, then certiorari may issue. Harris Certiorari, § 64."

■ Not every plea of double jeopardy is ripe for review by certiorari upon being overruled. Here we have the entire record of the first trial properly before the Court, and all that is required to determine. the validity of defendants' contention is to interpret the action of the jury and then determine whether, in the context of the evidence in the first trial, defendants were acquitted of all charges. No additional evidence or pleading at the second trial is re-

quired before the appellate courts can pass upon the issue presented by defendants, raising a question of illegality in the action of the trial judge in putting them to trial a second time in the same court for the same offense.

■ Much is said in the majority opinion of the Court of Criminal Appeals about the necessity of pleading double jeopardy in the trial court. The view we take of this case renders the authorities cited inapplicable. The written motion of defendants filed in the trial court, heretofore referred to, expressly alleges that the defendants were placed in jeopardy, tried by a jury, and found not guilty of all offenses. We interpret that plea, in the context of this case, as tantamount to a plea of double jeopardy. Defendants' motion clearly says to the trial court—we have been put in jeopardy, tried and exonerated of all offenses for which we have been indicted, then prays that the court enter judgments of not guilty as to all offenses to protect defendants from a second trial on any of said offenses.

The correct interpretation of the action of the jury in this case is a difficult one. We have engaged in extensive research for guidance and little has been found that lights our way. Desirable certainty and formality of verdict is clouded by the initial report that the jury could not agree upon anything, and by failure to poll the jury. The court reporter's recording of the assent of eleven jurors with the words, "Yes, sir", is a poor substitute for polling of the jury.

■ T.C.A. § 20–1324 provides that trial judges in both criminal and civil cases shall be required to poll the jury on application of either the State or the defendant, in criminal cases, and the plaintiff or the defendant in civil cases. The object of polling the jury is the ascertainment, for a certainty, of each individual juror's verdict. However, we are of the opinion that the verdict in this case, as reported in the bill of exceptions, must be taken at its face

value. So construed, it was favorable to the defendants and the concluding remark of the trial judge put the State on notice that he, at that time, interpreted the verdict as a finding of not guilty as to grand larceny. In the light of our statute, it was incumbent upon the State to request that the jury be polled, and, having failed to do so, it has lost standing to complain as to lack of certainty or form.

The remaining question to be answered is whether or not that verdict, in the factual context of the proof at the trial, exonerates the defendants of petit larceny and receiving and concealing stolen property.

The evidence adduced at the trial revealed that the cattle belonged to one Grinder, a resident of Ohio, and were in the care and custody of J. W. Walker. Whitwell, driving a 1-ton truck, and McClain driving a pick-up truck, went to the Grinder farm during morning daylight hours, and loaded eight cows in Whitwell's truck and eight calves in McClain's pick-up. Walker happened along and saw McClain on a road near the Grinder farm, recognized the calves, stopped McClain and questioned him. McClain told him that they were hauling the cows and calves to market for Eulas McClain and that Whitwell had gone on ahead toward Hohenwald. Walker dispatched two men to overtake Whitwell. Whitwell had waited about a mile up the road when he observed that McClain's truck was not behind him.

Whitwell testified in considerable detail about receiving a long distance call on the day before from a man who identified himself as Eulas McClain, of McClain's picking him up in a white Pontiac, driving him to the Grinder farm and pointing out the cattle that should not be picked up and hauled to market at Columbia the next day, all other cattle to go. McClain was said to have given Whitwell a key and a note containing directions. Whitwell testified that he asked McClain if he would meet them at the farm the next morning and was advised that it was possible that he would

not, in which event Whitwell was instructed to load the cattle and meet McClain at the Mid-South Stock Barn in Columbia. Whitwell described himself as a farmer, heavy equipment operator, quarter horse owner and rider, and cattle hauler; that he was well known in the area and frequently called on to use his quarter horses to catch cows and horses. He further testified that he had been unable to locate Eulas McClain, despite extensive efforts, described in some detail.

Defendant Forrest McClain was a friend of Whitwell and his pick-up truck was needed to haul the calves separate from the cows to avoid injury. He had helped Whitwell haul cattle on numerous occasions before, and they did some farming together. Forrest McClain did not know Eulas McClain.

The State's case rested upon the taking of the cattle by defendants, without permission of the owner or Walker. The taking was acknowledged by defendants, but it was said to be innocent taking, based upon their belief that Eulas McClain was the owner of the cattle. Thus, a jury issue was presented, and there was sufficient evidence to support a conviction of grand larceny or an acquittal and the explicit finding of no criminal intent, which was implicit in the verdict of not guilty of grand larceny, under the factual situation here.

Walker testified the calves were worth a minimum of $2,500 and the cows at least $200 each. There was no evidence whatever that the cows could have been worth less than $100. However, the trial judge charged the lesser included offense of petit larceny.

 While petit larceny is included in the indictment for grand larceny, the court is not required to instruct on lesser included offenses where there is no evidence to support a lesser included offense, e. g., Reynolds v. State, 210 Tenn. 310, 358 S. W.2d 320 (1962).

In *Reynolds,* Mr. Justice White extends the general rule by observing that the court is not justified in so instructing the jury, where there is no evidence that the value of the property is less than $100. But, is it within the province of the jury to return a verdict of guilty of the lesser offense of petit larceny, where all of the evidence of value makes the offense grand larceny under the statute?

In Wattingham v. State, 37 Tenn. 64 (1857), the indictment was for grand larceny and the monetary value of the property stolen was in excess of the dividing line between petit and grand larceny, but the jury found defendant guilty and fixed punishment at two years, which was, in effect, a conviction of petit larceny. Defendant asserted incongruity on the face of the verdict and was rejected by the rule that a party cannot assign for error that which is for his own advantage. We find no reported case of the State appealing from a conviction in a similar situation.

■ T.C.A. § 40–2518 makes it the duty of the trial judge to charge lesser included offenses, without request. But the principle is well established in our case law that it is not error to refuse to charge lesser offenses where, under the evidence, defendant can be guilty of the greater offense, or no offense at all. See, e. g., Baker v. State, 203 Tenn. 574, 315 S.W.2d 5 (1958).

■ In accord with Reynolds v. State, supra, we do not approve the practice of charging petit larceny, where there is no evidence to support it, and we cannot sanction the retrial of defendants for the crime of petit larceny, after acquittal of grand larceny, in a case where no credible evidence could be adduced that the value of the goods allegedly taken was less than $100.

■ Further, in the instant case, the jury's finding a lack of intent to steal clearly exonerates defendants of an essential element of petit larceny.

The second count of the indictment charged defendants with receiving and concealing stolen property. Again, the trial judge charged the jury that receiving and concealing stolen property over the value of $100 was punishable by three to ten years and, if less than $100 in value, one to five years in the penitentiary, etc.

■ Receiving is a necessary ingredient of the offense of receiving stolen property. Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649 (1967). Defendants did not receive the cattle from Eulas McClain or anyone else. They either stole the cattle, committing grand larceny, or they were the innocent victims of Eulas McClain's scheme.

■ Concealing stolen property is an offense distinct from and independent of receiving stolen property. Deerfield v. State, supra.

■ Knowledge that the property has been stolen is an essential ingredient of the offense of receiving and the offense of concealing stolen property. See, e. g., Kessler v. State, 220 Tenn. 82, 414 S.W.2d 115 (1967).

■ If they had guilty knowledge, under the facts of this case, they were guilty of grand larceny. They were exonerated of grand larceny, with the additional finding that they had no intention of stealing, a fortiori they could have no guilty knowledge that they were concealing stolen property.

The judgment of the Court of Criminal Appeals is reversed and the cause is remanded to the Circuit Court of Wayne County, Tennessee, for the entry of judgment dismissing all charges growing out of the indictments involved in these cases.

COOPER, HENRY and BROCK, JJ., concur.

HARBISON, J., dissenting opinion.

HARBISON, Justice (dissenting).

I respectfully dissent from a portion of the opinion prepared for the Court by the Chief Justice. I have no particular disagreement with the procedural aspects of the case, insofar as the use of the writ of certiorari is concerned. I simply do not believe that there has ever been a jury verdict rendered in this case insofar as the charges of receiving and concealing stolen property are concerned. I therefore do not believe that a retrial of the petitioners on those charges would or could constitute double jeopardy.

It is highly doubtful, in my mind, that the jurors intended to return any sort of verdict. They reported that they were hopelessly deadlocked, but the very most that could be made of their informal colloquy with the trial judge was an acquittal of the charge of grand larceny and of an intent to steal. The trial judge later so held in a post-trial motion, and entered an order dismissing the indictment for grand larceny.

I am in agreement with the principal opinion that the acquittal of the charge of grand larceny probably carried with it, as a lesser included offense under the facts of this particular case, the charge of petit larceny, and I do not disagree with the result of the case insofar as the larceny charges are concerned.

The maximum that can be made of the statements of the jurors, however, is that they did not find the defendants guilty of grand larceny and did not think that the defendants had an intent to steal. I do not read the report of the jurors as acquitting the defendants of all criminal intent, and certainly an intent to steal is not an element of the offenses of receiving or concealing stolen property. Williams v. State, 216 Tenn. 89, 390 S.W.2d 234 (1965). Indeed it has been held in this state that a defendant cannot be convicted both of larceny and of receiving and concealing stolen property in the same transaction. A conviction of one of these offenses necessarily results in an acquittal of the other. Peek v. State, 213 Tenn. 323, 375 S.W.2d 863 (1964); Williams v. State, 216 Tenn. 89, 390 S.W.2d 234 (1965).

It does not follow, however, that an acquittal of one of these offenses necessarily requires an acquittal of the other. I do not find that the jury made any reference whatever in their colloquy with the trial judge as to acquittal of the charges of receiving or concealing stolen property. The one juror who spoke stated that the defendants had taken and loaded the cattle but the jury did not "think they knew they were *stealing* at the time. . ." He made no statement as to whether the defendants knew or should reasonably have been put on inquiry that the cattle in fact were not the property of the person from whom they had acquired access to the field or as to the state of mind of the defendants with respect to concealing the cattle. He simply said the jury could not "agree on anything else." The only other charges against defendants, apart from larceny, were those of receiving and concealing.

There is evidence in the record that one of the trucks had tarpaulins around the bed in such manner that the contents thereof could not be readily discerned, and there was considerable testimony in the record that this was an unusual method of hauling cattle. There was conflicting evidence on the point, and the credibility of the defendants was sharply drawn into issue throughout this entire trial.

I do not think that the District Attorney or any other attorney could reasonably be said to have waived the right to poll the jury in light of the very indefinite and uncertain colloquy which occurred with the trial judge. The Tennessee statutes clearly give the right to either party in a civil or criminal case to poll the jury upon receipt of a jury verdict. T.C.A. § 20–1324 et seq.

Neither the judge nor counsel considered what the jurors reported to the trial judge to be a verdict in this case, and I do not think that there was ever any opportunity for anyone to poll the jurors. Indeed I am not at all sure that the colloquy with the jury should be treated as a verdict in any sense, and I think that the defendants have received very liberal treatment in this case by having a verdict entered in their favor on the post-trial motion as to the larceny counts. I certainly do not think that they are entitled to a dismissal of all of the charges against them.

This Court has always required that there be a clear, definite and intelligible statement from a jury in order for their report to constitute a verdict. In the case of State ex rel. Myers v. Brown, 209 Tenn. 141, 351 S.W.2d 385 (1961), the Court said:

"The word 'verdict' is from the Latin *veredictum* meaning a true declaration. It is the formal and unanimous decision or finding made by a jury empaneled and sworn for the trial of a cause and reported to the court upon the matters in question duly submitted to them upon the trial. Sitterson v. Sitterson, 191 N.C. 319, 131 S.E. 641, 51 A.L.R. 760, and other cases. The word 'verdict' has also been defined as 'the definitive answer given by the jury to the court concerning the matters of fact (and under Tennessee procedure matters of law under proper instruction from the court) committed to the jury for their deliberation and determination.'"

209 Tenn. at 148, 351 S.W.2d at 388.

In the case of Baldwin v. State, 213 Tenn. 49, 372 S.W.2d 188 (1963), the Court, quoting from other authorities said:

"'The verdict should be in language which is clear and certain as to its meaning and which cannot be mistaken.'"

213 Tenn. at 52, 372 S.W.2d at 189.

In the same case the Court said:

"We think that this verdict is so unintelligible as to render it invalid. One can only speculate on what the jury intended to do in this case; and no evidence of their intention can be gleaned from the punishment imposed . . . ." (Ibid.)

In that case the Court ordered a mistrial because of lack of clarity in the jury verdict.

In the earlier case of Baldwin v. State, 185 Tenn. 205, 204 S.W.2d 1018 (1947), the Court said:

"There is no verdict so long as there is any uncertainty or contingency as to the finality of the determination of the jury. . . The jury after hearing the evidence adduced at the trial and the charge of the court should act without regard to the effect of their verdict on the defendant or anyone else. There must be finality in so far as they are concerned."

185 Tenn. at 207, 204 S.W.2d at 1018.

In that case the jury had announced that they found the defendant guilty, but they wished to recommend a suspended sentence on certain conditions, stating that if this were not acceptable they would like to go back for further consideration. In spite of the jurors' statement, the trial judge put down a judgment of conviction and sentenced the accused to a penitentiary sentence. Reversing, this Court said:

"Obviously there was no verdict in the instant case. Cases are cited by the State in which there was a verdict followed by a recommendation. The verdict in these cases was accepted and the recommendation held to be surplusage. In each instance though there was finality in the jury's determination. There was no hesitation or vacillation on their part; no telling the Court that if their recommendation was not accepted they

wanted to return and deliberate further. This statement of the jury within itself nullifies their verdict." 185 Tenn. at 207–208, 204 S.W.2d at 1019.

It will be noted in the present case that one of the jurors protested the procedure of being queried by the trial judge as to their conclusions, after they had already reported that they were unable to agree. It seems to me that the trial judge was probably correct in the first instance in entering an order of mistrial and ordering the case to be retried in its entirety, because no formal verdict in any accepted sense of the term was ever rendered.

Everyone who has reviewed this record in the Court of Criminal Appeals and in this Court has agreed that there was ample evidence for the jury to convict these defendants on the charges of larceny. They have, therefore, been treated most liberally in obtaining, in effect, a belated directed verdict on those charges. They certainly should not be given the benefit of an acquittal of the charges of receiving and concealing stolen property upon a questionable inference to be drawn from the informal statement of the jurors in this case.

It is true that in Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649 (1967) the Court held that the defendant could not be guilty of the crime of receiving stolen property, because he had received the property, or had taken possession of it, directly from the owner thereof. This was also true in the case of Franklin v. State, 202 Tenn. 666, 308 S.W.2d 417 (1957).

That is not the factual situation in the present case. The defendants in this case did not take the cattle from the true owner, Mr. Grinder, or from his agent and custodian, Mr. Walker. They did not even purport to do so. Instead they took them, according to their testimony, upon the instructions of the third person, who allegedly gave them a key to the pasture, and who was not known by them to be either. the owner or acting for the owner. They in effect, therefore, received possession and access to the property from a third person, who was undertaking to exercise dominion and control over the cattle. Whether the defendants acted innocently or with guilty intent is, in my opinion, a question of fact to be determined by the jury from all of the circumstances, including the credibility of the defendants themselves.

I have the same opinion with regard to the matter of concealing stolen property. The defendants were en route to a livestock barn for the purpose of selling these cattle, and at least some of them were concealed from public view under circumstances which, to say the least, might have supported a finding by the jury that they were being transported in a concealed manner and with intent to conceal them from the true owner.

In all events, this Court is not required, on a petition for certiorari as used here, to determine whether the trial court acted correctly or not in refusing to direct a verdict for these petitioners on their post-trial motion. The question is simply whether they have, in fact, previously been acquitted of the remaining charges so that a retrial would constitute double jeopardy. In my opinion, they have not been so acquitted.

Whether the District Attorney will see fit to bring these cases to trial again solely upon the charges of receiving and concealing is a decision for him to make. In my view, however, there is no legal prohibition against his doing so as a result of the original mistrial.