**STATE of Tennessee, Appellant,**

v.

**Andrew SEAGROVES, Appellee.**

Supreme Court of Tennessee,
at Nashville.

May 28, 1985.

David M. Himmelreich, Asst. Atty. Gen., Nashville, for appellant; W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, of counsel.

Robert S. Peters, Winchester, for appellee.

## OPINION

FONES, Justice.

We granted this Rule 11 application for permission to appeal to determine whether the double jeopardy clauses of the state and federal constitutions precluded retrial on lesser included offenses after the jury acquitted defendant of armed robbery but deadlocked as to all lesser included offenses.

Seagroves was indicted with a co-defendant, Rollins, for armed robbery.[1] The proof at the second trial reveals that some-

time around 9:50 p.m. on October 27, 1981, Seagroves, Rollins, and Chaffee, an accomplice who confessed to the robbery and testified for the State, entered the garage at the residence of Mitchell Hobbs. When Hobbs arrived home shortly after 10:00 p.m., he went into the garage to change a light bulb that had been out for several nights. As Hobbs reached to change the bulb, he heard a noise and felt a gun against his throat. Hobbs was confronted by three masked assailants who covered his face and wrestled him to the floor, taping his arms and legs. The robbers then removed approximately $700 in cash from Hobbs's wallet and fled in a vehicle driven by Seagroves. Chaffee testified that he, Seagroves and Rollins waited for Hobbs in the darkened garage and robbed him. He further testified that Seagroves carried a .38 caliber pistol and was wearing a red and blue toboggan which Seagroves threw out of a car window as the three men drove around the area. This mask, allegedly worn by Seagroves during the commission of the robbery, was discovered along an area road the day after the robbery and was introduced at trial. Hair samples from the toboggan matched hairs removed from Seagroves.

Seagroves testified and denied any participation in the robbery. He admitted that he had been with Rollins and Chaffee earlier on the night of the robbery but insisted that he and Rollins parted with Chaffee and went to McMinnville before the time of the robbery. He testified that he was taking Valium and drinking beer and that Valium affected his memory. That testimony was apparently to account for some discrepancies in prior statements about where they went and what they did in McMinnville.

At the first trial, the jury acquitted Seagroves of armed robbery but was unable to reach a verdict on the lesser included offenses. Defendant's attorney had requested that the court charge "the full scale of

---

1. During the pendency of the appeal to the Court of Criminal Appeals, co-defendant Rollins

died, and his appeal abated.

possible included offenses under armed robbery," despite the caveat by the trial judge that "actually under this proof this appears it's armed robbery or ... nothing." Defense counsel acknowledged that charging lesser included offenses in these circumstances could work to defendant's disadvantage, stating, "That's a risk you have to run." Over opposition by the State as to a charge on petit larceny, the trial judge then agreed to "give the full scale charge."

After deliberating for approximately fifteen minutes, the jury returned to the courtroom and reported that they found defendants not guilty of armed robbery, but they were unable to agree on a verdict on the lesser charge of assault with intent to commit armed robbery. The jury was instructed to deliberate further, and, upon its return approximately ninety minutes later, reported that they were still "hopelessly deadlocked" on the charge of assault with intent to commit robbery. Thereupon the trial judge declared a mistrial, and there is no indication that defense counsel objected to the mistrial or any other aspect of the jury's decision.

At the second trial, the judge specifically instructed the jury that they could not find defendants guilty of armed robbery because defendants had previously been acquitted on that charge. The jury found defendants guilty of assault with intent to commit armed robbery, and punishment was fixed at imprisonment in the state penitentiary for not less than five years nor more than twenty-one years.

The majority of the Court of Criminal Appeals reversed the conviction and dismissed the indictment, holding that the former jeopardy provisions of the state and federal constitutions were violated.

The majority's position was based primarily upon *Brittain v. State,* 26 Tenn. 117 (1846). *Brittain* is clearly distinguishable from the case at bar. There was no issue of double jeopardy as defendant was not tried upon the offense charged in the indictment, assault with intent to commit murder in the first degree. The entire

factual recitation of what occurred in that case is as follows:

The plaintiff in error was indicted at the March term, 1846, of the Williamson circuit court for an assault with intent to commit murder in the first degree. At the July term of the court the attorney general, with the assent of the court, entered a *nolle prosequi* as to the felony; and defendant thereupon submitted to the court, and was fined $50, and adjudged to undergo imprisonment for sixty days; from which judgment this appeal is prosecuted. 26 Tenn. at 117–118.

The Court observed, in the course of its opinion, that the attorney general, with the assent of the court, could have stricken from the indictment the words that charged malice and the felony, "leaving only such as would charge the inferior offense..."; and also that if defendant had gone to trial on the indictment, that the jury could have acquitted him of the felony charged and "found him guilty of an assault only." Later the Court said, "[t]his man's submission was doubtless made with a distinct understanding of the offence [sic] he intended to confess." 26 Tenn. at 118.

Thus, it appears that after the State voluntarily dismissed the indictment containing the single charge of assault with intent to commit murder in the first degree, the defendant pled guilty to the lesser offense of assault for which the trial judge fined and imprisoned him. The Court reasoned that the charge of the lesser offense, "necessarily goes with" the greater offense, not because the words of the indictment charge a lesser offense, but because in legal contemplation the lesser offense is charged in an indictment for a greater offense; that the charge constituted by the words of the indictment could not be withdrawn and, "the legal idea of the inferior offense retained upon which to try the defendant."

The *Brittain* court recognized that it was dismissing the defendant on a technicality and justified it with the comment that, "in seeking to get rid of technical forms that have no tendency to the effectu-

ation of justice, we must be careful that we do not go on [to] the other extreme." 26 Tenn. at 118. *Brittain* has no bearing upon the issue in the instant case.

In the case at bar, the indictment had not been dismissed and in legal contemplation the lesser included offenses remain pending because a hung jury created a manifest necessity that the trial judge declare a mistrial. Defendant does not, and indeed could not, successfully question that a manifest necessity existed for the declaration of a mistrial.

■ It is well-settled that dismissal of a jury that cannot agree upon a verdict does not operate as an acquittal of the defendant, and his subsequent retrial does not, therefore, constitute double jeopardy. *Richardson v. United States*, ——— U.S. ———, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); *State v. Witt*, 572 S.W.2d 913 (Tenn.1978); *State v. Malouf*, 199 Tenn. 496, 287 S.W.2d 79 (1956).

The facts in *United States v. Gooday*, 714 F.2d 80 (9th Cir.1983), are indistinguishable from those in this case. Defendant was tried under a one-count indictment for first degree murder. At defendant's request, the jury was instructed on the lesser included offenses of second degree murder, voluntary manslaughter and involuntary manslaughter. The jury acquitted Gooday of the first degree murder charge but could not agree on a verdict on the lesser offenses. The court declared a mistrial and, under the same indictment, set the case for retrial on the lesser included offenses.

Defendant, appealing a pretrial order denying his motion to dismiss, argued that since he was acquitted on the sole count specified in the indictment he could not be retried on the inferior offenses, contending that the indictment ceased to exist when the jury acquitted him of first degree murder. In affirming the trial court's denial of defendant's motion, the court, relying on language from *Green v. United States*, 355 U.S. 184, 190 n. 10, 78 S.Ct. 221, 225 n. 10, 2 L.Ed.2d 199 (1957), stated the situation was the same as if defendant had been charged in separate but alternative counts since the "constitutional issues at stake here should not turn on the fact that both offenses were charged to the jury under one count."

The *Gooday* court also relied upon *Edmonds v. United States*, 273 F.2d 108 (D.C. Cir.1959), certiorari denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960). *Edmonds* was indicted for first degree murder and the jury found him guilty of second degree murder as a lesser included offense. His conviction for second degree murder was reversed upon appeal and at his retrial for second degree murder under the original first degree murder indictment, he insisted that double jeopardy immunized him from further prosecution under the first degree murder indictment because of his acquittal of that leading offense. That constitutional claim was rejected upon the District of Columbia circuit's interpretation of *Green* as, "granting independent force to lesser included offenses on which a jury has been instructed under one count of the indictment." *United States v. Gooday*, 714 F.2d at 82.

The *Gooday* court concluded by holding that the lesser included offenses on which the jury was instructed under a single count indictment should be treated as if specified in separate counts, and, therefore, there was no preclusion of retrial for the lesser offenses. 714 F.2d at 83. We think the reasoning in *Gooday* is sound and applies to the present case.

There is also authority in other jurisdictions which supports the proposition that a defendant may be retried for lesser included offenses on a single charge indictment of the greater offense when the jury acquits defendant of the greater offense but cannot reach a verdict on the lesser offenses. *See*, e.g., *State v. Russell*, 101 Wash.2d 349, 678 P.2d 332 (1984); *Stone v. Superior Court of San Diego County*, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982) (while primarily construing a California statute, the court stated that there was "no identifiable constitutional interest in preventing retrial" under these circum-

stances while there existed an important public interest in obtaining a final determination of whether the offense was committed).

A concurring opinion by a member of the intermediate court recognized that *Brittain* was "irrelevant to this case," but also concluded that double jeopardy was applicable on the authority of *Whitwell v. State,* 520 S.W.2d 338 (Tenn.1975). We disagree.

The application of double jeopardy here is necessarily premised upon a finding that as a matter of law defendant was guilty of the greater offense or no offense at all, as was the case in *Whitwell.* In *Whitwell,* the record in this court consisted of a complete transcript of the evidence adduced at the prior trial. In the instant case we do not have a transcript of the evidence at the first trial, and it would be inappropriate for an appellate court to find, as a matter of law, that the evidence in the first trial was such that defendant was either guilty of armed robbery or nothing. But, if we assume that the evidence at the first trial was identical with that adduced at the second trial, several significant questions would arise as to whether we would be justified in finding that defendant was either guilty of armed robbery or nothing. However, we find it unnecessary to analyze the facts and articulate those problems in reaching that conclusion.

Defendant's insistence that the trial judge charge all lesser included offenses recognized the independent force of the lesser included offenses that the jury was instructed upon and is a position inconsistent with his double jeopardy claim that is predicated upon the insistence that the lesser included offenses did not exist independently of the armed robbery offense.

Finally, in *Whitwell* the only lesser included offense of grand larceny, the indicted offense, was petit larceny. In addition to acquitting Whitwell of the offense of grand larceny, the jury expressly exonerated him of the criminal intent of stealing, an essential element of petit larceny, enabling the court to find, as a matter of law, that defendant could not be retired for that lesser included offense. Here, defendant's acquittal of armed robbery did not eliminate any essential element of the lesser included offenses. This circumstance completely removes this case from the ambit of *Whitwell's* authority.

 We, therefore, find no infringement of defendant's constitutional rights against double jeopardy. We adopt the rationale advanced in *Gooday, supra,* and, accordingly, hold that the double jeopardy clauses of the state and federal constitutions did not preclude retrial of the defendant after a mistrial was declared at an earlier trial because the jury could not reach a verdict on defendant's guilt of lesser offenses included in the crime for which he was indicted. The judgment of the Court of Criminal Appeals is reversed and the decision of the trial court is affirmed. This cause is remanded to the Criminal Court of Grundy County for the entry and enforcement of that judgment.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.