IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. JIMMY DALE HOGAN

**Appeal from the Circuit Court for Lawrence County**
**No. 18,969     William B. Cain, Judge**

---

**No.  M1999-00013-CCA-R3-CD Decided May 19, 2000**

---

Defendant appeals his jury convictions for felony murder and especially aggravated robbery.  At the conclusion of the first trial, the jury was unable to reach a verdict and the trial court declared a mistrial.  Upon conclusion of the second trial, the jury returned a guilty verdict on both counts.   In this appeal as of right, defendant alleges the evidence is insufficient to sustain his convictions and further argues that the trial court's failure to dismiss the charges at the conclusion of the first trial resulted in his second trial being a violation of double jeopardy.  In addition, defendant alleges various evidentiary rulings prejudiced his case.  Upon a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

OGLE, J., delivered the opinion of the court, in which WADE, P. J. and PEAY, J., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Jimmy Dale Hogan.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; Mike Bottoms, District Attorney General; Robert C. Sanders and James G. White II, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### FACTS

        At approximately 11:00 a.m. on June 19, 1992, in St. Joseph, Tennessee, the victim, Joanne Rigling, was found dead at Rigling's market where she was a cashier.  She had a single, close range gunshot wound to the head.  The cord to the cash register had been cut and the cash register removed.

        At trial Rita Hughes testified that at approximately 10:45 a.m. she passed the market and saw the defendant.  She stated she observed two people in a black, mid-size car and identified the defendant as the passenger.  Additional evidence was presented by the state that at approximately 11:30 a.m. defendant  was traveling at a high rate of speed about thirty miles outside of St. Joseph, when he swerved to miss a car and hit a tree.  Bradford Simpson, the driver of the other vehicle,

testified that defendant asked him not to call the police and removed his license plate from the vehicle he was driving, a "black, Oldsmobile-type Cutlass." Simpson retrieved a chain, pulled defendant out of the ditch, and towed the car to defendant's uncle's residence.

Wilma Hogan, defendant's aunt, testified that defendant arrived at her home after the accident and was not wearing a shirt, and his blue jeans were covered with red, dingy splatters from the knee down. She further testified defendant immediately took a shower and requested she wash his clothes.

Karen Hogan Shulkie, defendant's ex-wife, testified that defendant disappeared for about a week after the murder. Upon his return, he told her he had been hiding out in the woods. She testified that defendant had changed his appearance and was driving a different car. Defendant then told her he was going away for awhile. When he returned the second time, he was again driving the black Cutlass he had prior to the murder. She testified that she asked the defendant at one point about the Rigling murder, and defendant said "she was better off not knowing about it." Shulkie later gave a statement to T.B.I. agent, Don Carmen, stating defendant had confessed to robbing the market and murdering the victim. She also told Carmen defendant warned her that he would kill her if she told anyone.[1]

Defendant made various "confessions" prior to and during his incarceration. Charles Laws, Daniel Calahan, and Chris Young all testified that defendant confessed to robbing the market and murdering the victim.[2] In addition, Rosa Sizemore, the nurse at the Lawrence County jail, testified that defendant stated, "you think that woman in St. Joe's got it bad; wait till I get out of here and see what I do to you."

The jury convicted defendant of felony murder and especially aggravated robbery. Defendant received a life sentence for felony murder and a consecutive twenty year sentence for especially aggravated robbery. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

Defendant raises two issues with regard to the sufficiency of the evidence. First, defendant alleges the trial court erred by not dismissing the case at the conclusion of the first trial. He alleges that retrial was barred by the Double Jeopardy Clause of the Fifth Amendment to the Unites States Constitution and Article 1, Section 10 of the Tennessee Constitution. Second, he

---

[1]The witness admitted she told agent Carmen that her husband had confessed to the crimes; but, at defendant's trial, she recanted her statements and said the defendant had not confessed. However, she did state that she continued to be in fear of the defendant.

[2] None of defendant's statements were made to law enforcement officials. Laws was incarcerated with defendant at the Lawrence County jail, where defendant was held during his first trial. Calahan and Young were both acquaintances, and the statements made to them were made prior to defendant's incarceration.

claims that the evidence presented at the second trial was insufficient to sustain his convictions for felony murder and especially aggravated robbery.

## A. **Double Jeopardy**

Upon conclusion of the defendant's first trial, the jury was unable to return a verdict and the trial court declared a mistrial. Defendant asserts the evidence presented was insufficient to sustain his conviction. Therefore, he argues that the trial court erred by refusing to dismiss the case at the close of the state's proof and again at the conclusion of all the proof.[3] Defendant acknowledges the discretion of the trial court to order a mistrial where the jury is unable to reach a verdict; however, he contends that where the evidence is insufficient to sustain a conviction at the first trial, retrial constitutes a double jeopardy violation.

Under the United States and Tennessee Constitutions, a defendant is protected from the "perils" of a second trial for the same offense. Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 837 (1949); Whitewell v. State, 520 S.W.2d 338, 341 (Tenn. 1975). However, the principles of double jeopardy do not ensure that a defendant is entitled to go free every time he is subjected to a trial which fails to end in final judgment. Wade, 336 U.S. at 688, 69 S.Ct. at 837.

The United States Supreme Court has held that upon final judgment, if the evidence is adjudged insufficient to sustain the conviction, the Double Jeopardy Clause precludes a second trial. Burks v. United States, 437 U.S.1, 18, 98 S.Ct. 2141, 2150-51 (1978). Tennessee has recognized this same principle. See State v. Clayton, 656 S.W.2d 344, 352 (Tenn. 1983).

A subsequent United States Supreme Court case dealing with the situation currently before this court clarified the application of Burks. In Richardson v. United States, 468 U.S.317, 104 S.Ct. 3081 (1984), the defendant argued that if the prosecution failed to present sufficient evidence to sustain his conviction at the first trial, he may not be tried again following a mistrial which resulted due to a hung jury. The court held that Burks was limited to an "unreversed appellate ruling" based on insufficiency of the evidence. Id. at 323, 3085; see also Burks, 437 U.S. at 18, 98 S.Ct. at 2150. Thus, double jeopardy does not bar a retrial following a hung jury mistrial. Likewise, Tennessee courts have held that under the doctrine of "manifest necessity," the inability of the jury to reach a verdict permits the trial court to declare a mistrial and order the defendant be retried. State v. Smith, 871 S.W.2d 667, 671 (Tenn. 1994); State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

More importantly, when a mistrial results from a hung jury, Burks does not require that an appellate court rule on the sufficiency of the evidence at the mistrial. Richardson, 468 U.S. at 323, 104 S.Ct. at 3085.

---

[3] Our review of the record reveals no motion by defendant for judgment of acquittal at the conclusion of all the proof. See Tenn. R. Crim. P. 29(a). In addition, the record reveals no motion for judgment of acquittal following the trial court's order declaring a mistrial. See Tenn. R. Crim. P. 29(c).

The principle established in <u>Burks</u> and the principles governing the court's decisions in the hung jury cases can be reconciled by recognizing that the "protection of the Double Jeopardy Clause... applies only if there has been some event... which terminates the original jeopardy." <u>Richardson</u>, 468 U.S. at 325, 104 S.Ct. at 3086 (citations omitted). For purposes of double jeopardy analysis, an appellate court's finding that the evidence was insufficient is equivalent to an acquittal. <u>Id.</u> at 326, 3086. However, the failure of the jury to reach a verdict is not the equivalent of an acquittal and will not terminate the original jeopardy to which petitioner was subjected. <u>Id.</u> at 325-26, 3085-86. Thus, the appellate court is not required to examine the sufficiency of the evidence of the case ending in a mistrial.

Defendant does not contest the trial court's discretion to grant a mistrial when the jury is unable to reach a verdict, and we find no abuse of that discretion here. We are not required to examine the sufficiency of the evidence at the first trial. There is no double jeopardy violation.

### B. <u>Sufficiency of the Evidence</u>

Defendant claims the evidence presented at the second trial is insufficient to sustain his convictions. Defendant contends that the evidence presented was "completely" circumstantial and failed to establish a "web of guilt" sufficient to maintain convictions for felony murder and especially aggravated robbery. The only real issue is one of identity of the perpetrator.

The standard of review for a sufficiency of the evidence challenge is whether viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); <u>State v. Evans</u>, 838 S.W.2d 185, 190-91 (Tenn. 1992); Tenn. R. App. 13(e). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Great weight is given to the result reached by the jury. <u>State v. Johnson</u>, 910 S.W.2d 897, 899 (Tenn. Crim. App. 1995). This court will not reweigh or reevaluate the evidence, nor substitute its evidentiary inferences for those reached by the jury. <u>State v. Carey</u>, 914 S.W.2d 93, 95 (Tenn. Crim. App. 1995).

Although the evidence of defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. <u>State v. Tharpe</u>, 726 S.W.2d 896, 899-900 (Tenn. 1987); <u>State v. Buttrey</u>, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, for this to occur, the circumstantial evidence must be consistent with guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. <u>Tharpe</u>, 726 S.W.2d at 900. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." <u>Marable v. State</u>, 313 S.W.2d 451, 457 (Tenn. 1958)(citation omitted); <u>see also</u> <u>State v. Gregory</u>, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

The only issue in this case is the identity of the perpetrator. Testimony at trial revealed that defendant confessed to several people that he robbed the store and shot the victim. He

changed his appearance immediately after the homicide, went into hiding for several days, and obtained a different automobile. Furthermore, one of the state's witnesses identified the defendant as the man she saw outside the store minutes before the murder. Finally, the jury heard testimony that defendant's blue jeans were splattered with a red substance. This testimony was in accord with the testimony of the medical examiner and police officers on the scene who testified that the gunshot wound to the victim's head had caused blood to splatter on the counter, the walls and the floor. Thus, we find the jury received sufficient evidence to convict defendant of felony murder and especially aggravated robbery.

## EVIDENTIARY RULINGS

Defendant claims he was prejudiced by the trial court's incorrect rulings on various evidentiary matters. We address each allegation independently.

### (1)

Defendant argues the trial court should have granted a mistrial based on the testimony of Rita Hughes. During defendant's first trial the witness did not make an in-court identification. However, at the second trial, Hughes identified the defendant as being present at the store shortly before the murder. Defendant argues that the prosecution failed to make him aware of this eye-witness, and her testimony should have been excluded or a mistrial granted.

The district attorney informed the trial court that he did not know until that morning that the witness could identify the defendant. He stated that, at the first trial, she was never asked to make an in-court identification of the defendant.[4] In overruling the defendant's objection, the trial court pointed out that, contrary to defendant's contention, this evidence was not exculpatory. Furthermore, defense counsel had ample opportunity to and did cross-examine the witness in detail with regard to her current testimony and her testimony at the first trial. We can only conclude there was no error committed by the trial court.

### (2)

Defendant contends the trial court erred in allowing Police Chief Daniels to testify about the crime scene. Defendant argues the witness was not qualified as an expert in crime scene reconstruction and should not have been allowed to speculate about the position of the victim's body before and after the shooting, or the manner in which the shooting occurred. Defendant claims Daniel's testimony should have been limited to what he actually observed.

Generally, opinion testimony is limited to witnesses who qualify as experts in the subject matter on which they are testifying. See Tenn. R. Evid. 702. Under certain circumstances,

---

[4]In a hearing outside the presence of the jury, the District Attorney told the trial court that the state was unsure what the witness' response would be; therefore, they did not ask her to make an in-court identification of the defendant at the first trial. Since the record of the first trial was included in the record on appeal, we have taken the liberty to review the witness' testimony and find that she was not asked to make an identification at the first trial.

lay witnesses may express opinions.  See Tenn. R. Evid. 701.  Tennessee law has traditionally required that a lay opinion be based upon a factual predicate found in facts admissible in evidence. See State v. Sparks, 891 S.W.2d 607, 613 (Tenn. 1995).

The trial court limited the testimony to those statements which were corroborated by additional proof.  Thus, the witness was allowed to testify about the victim's position at the time of the shooting, the physical effects of the shooting, and the significance of the forensic evidence.

The state concedes that this testimony may have exceeded the boundaries of Tenn. R. Evid. 701.  However, independent corroboration was presented to support the testimony; thus, this testimony had no prejudicial effect upon the verdict.

**(3)**

During the testimony of Chris Young, the prosecution elicited hearsay statements made by Karen Hogan Shulkie.  The trial court sustained defense counsel's objection but did not give a curative instruction regarding the inadmissible statements.  Defendant asserts the trial court's failure to give the instruction was error.

Young testified that the defendant told him "Karen" was a "problem" because "she knew too much," and asked Young if he knew of "a way to get rid of her."  Essentially, the hearsay evidence complained of was a statement to the witness by Karen Hogan Shulkie, defendant's ex-wife.  The witness testified that he informed Shulkie of the defendant's statement, and she responded by telling him it was "true."  He testified that she "told him the exact same thing," indicating she was aware of defendant's involvement and his plans to "get rid of her."  Prior to Young's testimony, Shulkie testified that she relayed the same information to an agent with the Tennessee Bureau of Investigations.

In light of the evidence against the defendant, the failure to provide a curative instruction with regard to the hearsay did not prejudice the defendant.

**(4)**

Defendant contends the testimony of Charles Laws and Rosa Sizemore did not meet the relevancy requirements for admissibility.  Specifically defendant objected to testimony presented by these witnesses which he argues was inappropriately offered to show defendant's propensity for violence.

### A.  Laws Testimony

As previously stated, Karen Hogan Shulkie testified that she informed the T.B.I. that defendant had confessed to the robbery and murder, and threatened to kill her if she repeated his confession.  However, at trial she recanted her earlier statement and stated defendant had not confessed.  Thereafter, the state presented the testimony of Charles Laws allegedly to corroborate Shulkie's earlier statement and impeach her current testimony.  Laws testified that while he and defendant were "cell mates," defendant told him he did not "mean to kill the woman" in St. Joseph.

-6-

Laws also testified that defendant "would talk real sweet to [Shulkie] on the phone" and then tell Laws he "would do anything to get his child," even if he had to "take care of [Shulkie]."

Laws' testimony that defendant stated he did not intend to kill the victim was clearly relevant to the identity of the perpetrator. Defendant's statement to Laws that he would harm Shulkie to get his child was not proper impeachment of Shulkie's trial testimony. However, the defendant's statement of his intention to harm Shulkie is corroborative of Chris Young's testimony that defendant asked Young if he knew " a way to get rid of [Shulkie]" since "she knew too much." The testimony was, therefore, relevant.

### B. Sizemore's Testimony

Rosa Sizemore testified that when she was a nurse at the Lawrence County jail, the defendant consistently harassed her and stated, "you think that woman in St. Joe got it bad, wait 'til I get out of here and see what I do to you." Defendant contends this testimony was improper propensity evidence. Since defendant's statement was arguably an implied confession, the trial court properly admitted the testimony as relevant evidence.

### (5)

Defendant argues the trial court erred by not allowing him to present testimony from Dennis Danley that he observed two white males in a black Monte Carlo about seven miles from the scene two or three hours before the murder. The prosecution objected, and a jury-out hearing was conducted. The defendant sought to introduce photographs demonstrating the similarity between the Monte Carlo body types and the body type of defendant's vehicle, a Cutlass. Danley testified that although the pictures were "pretty close" to the body style of Monte Carlos produced from 1978 to 1984, they were not photographs of the actual vehicle he observed on the day of the murder. The trial court held that evidence that a car similar to the defendant's was seen some two to three hours before the crime was committed was not relevant and sustained the prosecution's objection.

Since the record only shows that this automobile was seen some seven miles from the murder scene over two hours prior to the murder, we conclude the trial court did not abuse its discretion in denying the introduction of this evidence.

### CONCLUSION

The retrial of defendant following his mistrial did not subject him to double jeopardy. In addition, the evidence presented at defendant's instant trial was sufficient to sustain his convictions. Furthermore, the defendant has failed to establish any prejudicial claim with regard to the trial court's evidentiary rulings. Therefore, we **AFFIRM** the judgment of the trial court.