69 N.J. Super. 504 (1961)
174 A.2d 486
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD LASTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1961.
Decided October 19, 1961.
*506 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Herbert C. Heim argued the cause for appellant.
Mr. John F. Russo, Assistant Prosecutor, argued the cause for respondent (Mr. William H. Huber, Acting Ocean County Prosecutor, attorney; Mr. Russo, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
The Ocean County grand jury returned indictments against defendant charging him with receiving stolen property, in violation of N.J.S. 2A:139-1, and escape, in violation of N.J.S. 2A:104-6. The jury found him guilty on both charges and he was sentenced to an indeterminate term at the Bordentown Reformatory. The county judge denied a motion for a new trial. Defendant appeals the judgment of conviction.
On August 22, 1959 defendant, while driving a Plymouth sedan bearing a New York registration, was apprehended for going through a stop street in Brick Township, Ocean County. He was taken to the State Police barracks where it was ascertained that the sedan was a stolen motor vehicle. *507 While at the barracks defendant twice escaped from police custody, but was recaptured each time.
The defense to the charge of receiving stolen goods was that the car had been borrowed. Defendant testified that he had borrowed the sedan from a friend, John Carlson, a New York resident who lived in Belmar during the summer. Carlson was never called as a witness, nor was he located. As for the escape charge, defendant attempted to justify his flight, alleging that he had been threatened and struck by the police.
Defendant assigns three grounds for reversal: (1) it was plain error, affecting his substantial rights, for the court in its charge to preclude the jury from considering the defense that the sedan had been borrowed; (2) the introduction into evidence of defendant's prior convictions was error; and (3) the court erred in permitting the State to introduce into evidence the jail doctor's report book to rebut defendant's contention of police brutality.

I.
The crime of receiving stolen goods under the Crimes Act of 1898 (c. 235, § 166) required proof of three things to establish guilt: that the goods were stolen, the accused received them, and at the time he received them he knew they were stolen. State v. Lisena, 129 N.J.L. 569, 571 (Sup. Ct. 1943), affirmed per curiam 131 N.J.L. 39 (E. & A. 1943). L. 1928, c. 187 (R.S. 2:164-1), a supplement to the 1898 act, and since amended by L. 1938, c. 348, eliminates the necessity of showing guilty knowledge by direct proof and in its place substitutes proof of possession from which guilty knowledge may be inferred. If the accused is shown to have received the goods or chattels within one year from the date they were stolen, such possession "shall be deemed sufficient evidence to authorize conviction unless the accused show to the satisfaction of the jury" that (a) the goods were a gift and not received from a *508 minor under 16 years of age, or (b) he paid the fair and reasonable value of the goods and they were not received from such a minor, or (c) he knew or made reasonable inquiry to determine that the seller was a regular dealer in such goods, or (d) and (e), that before or at the time of receiving the goods, he reported the transaction to the local police, and if the goods were received from a minor under 16, obtained police approval of the transaction. N.J.S. 2A:139-1.
The statute has been interpreted as creating a permissive presumption of guilty knowledge from the mere possession of stolen goods within the specified period. State v. Vigorito, 2 N.J. 185, 188 (1949); State v. Vitale, 35 N.J. Super. 568, 573 (App. Div. 1955). The statute does not shift the burden of proof, nor deprive a defendant of due process, but is merely an evidentiary rule whereby the accused must go forward with an explanation to rebut the permissive presumption. State v. Lisena, above, 129 N.J.L., at pages 571-2.
In this case defendant did not attempt to explain his possession of the automobile in one of the five ways set out in the statute, so as to rebut the presumption of guilty knowledge which the Legislature created. Instead, as noted, his explanation was that the car had been borrowed.
The question to be resolved here is whether the exceptions enumerated in the statute are the only defenses permitted to the crime of receiving stolen property. The question was raised in the Lisena case, where defendant argued that the statute deprived him of his right to interpose any defense other than gift or purchase. The court disposed of the contention by noting, simply, that "Lisena was not deprived of the right to explain his possession. He chose not to explain. He did not take the witness stand." The question was also raised in State v. Todaro, 131 N.J.L. 430 (E. & A. 1944). Defendant there argued that there were many other methods of lawful acquisition of chattels than those specified in the statute. As to this, the court *509 observed that "we need go no farther at this time than to say that defendant made and makes no claim to have acquired the property * * * in any other way than by purchase from a total stranger in the small hours of the morning."
At common law and under the Crimes Act of 1898 the accused could defend by showing the absence of any essential factor  in this case, that at the time he received the automobile he knew it was stolen property. Being a mere rule of evidence, the provisions of N.J.S. 2A:139-1 made that sufficient to support a conviction which was not sufficient at common law, namely, mere possession of the property within one year from the date it was stolen. The State need go no further to sustain a conviction than to show that the property was stolen, defendant had it in his possession within one year of its theft, and he had offered no persuasive explanation within the statute. The Legislature declared that this was sufficient to authorize conviction; it did not say that the jury must convict. Thus, the evidentiary rule established by the Legislature could not take any substantive defense away from an accused. He may still assert any defense he desires to the crime charged, and it is a question for the jury on the entire case, weighing the statutory inference of guilty knowledge and defendant's explanation, to determine whether the State has sustained its burden of proof. This is the sense in which we understand what the court said in State v. Lisena, above, when, dealing with defendant's contention that the statute deprived him of his right to interpose any defense other than gift or purchase, it observed that Lisena "was not deprived of the right to explain his possession. He chose not to explain." And see 2 Schlosser, Criminal Laws of New Jersey (rev. ed. 1953), § 2106, p. 1042, where the author, commenting on the statute, says:
"The practical effect of the presumption of guilty knowledge arising out of possession of stolen property is to require the accused to go forward with the evidence and explain his possession, the jury being *510 instructed that they may find him guilty in the absence of any reasonable explanation." (Italics ours)
The statute must be read in the light of the common law and, if possible, the two should be reconciled. "Before a statute supersedes the common law, there must be some express or specific statement to that effect." State v. Western Union Telegraph Co., 12 N.J. 468, 486 (1953), appeal denied 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953), citing State v. Norton, 23 N.J.L. 33, 40-41 (Sup. Ct. 1850). We conclude that the statute in no way prohibits an accused from asserting any defense he chooses. However, the State retains the benefit of the inference to be drawn from his possession of the stolen goods within one year of the stealing, and the jury should be instructed that such possession is sufficient for them to infer guilty knowledge unless the accused offers a reasonable explanation. The determination as to what is a reasonable explanation is for the jury. The statute does no more than assert that any one of the stated five explanations, if persuasively established, is reasonable.
As we have said, the Legislature in enacting N.J.S. 2A:139-1 in its present form, merely sought to eliminate the need for showing guilty knowledge directly. It could not, and it may not be said that it intended to, limit the defenses available to one accused of receiving stolen property, simply to purchase and gift of that property. Defense counsel illustrates the absurdity of so holding by citing the following example:
A police officer takes into his possession stolen goods in the course of making an arrest, with the intent of restoring them to the owner at the earliest possible opportunity. The State, on proof of receipt of the stolen goods by the police officer knowing them to be stolen, has proven a prima facie case. The burden then shifts to the police officer to produce evidence showing lack of felonious intent, i.e., his intention of returning the goods to the rightful owner. If he could *511 defend only by establishing one of the five explanations set out in N.J.S. 2A:139-1, the jury could return a verdict of guilty. Clearly, in such a case the officer should be permitted to explain that he had no intention of depriving the owner of his property.
Another example may be drawn from the instant case. Is one who innocently borrows a stolen item from a thief with the intention of returning it to him, precluded from showing his lack of guilty knowledge or, otherwise stated, criminal intent? Such a result would be most unfair.
We apply the above discussion to the facts of this case. The trial judge read the statute to the jury in the course of his charge. After reading each subdivision he stated, and correctly so, that it was inapplicable under the facts of the case. He went on to say:
"* * * Of course, the purpose of the statute is plain. So often when people are found in possession of stolen property they will claim they bought it legitimately and they have come by it legally, properly, and, of course, this statute is intended to place upon the persons who were in possession of stolen property, the burden of showing that they acquired it legally, in other words, that they complied with the provisions of the statute in acquiring them, otherwise they may be convicted of violation of the statute of receiving stolen property or buying stolen property."
We consider the charge inadequate because it gave no direction to the jury in its deliberations as to what weight it should give to defendant's claim that he had borrowed the automobile. That the jury was left unenlightened and confused is clearly evidenced by what happened when it returned to the courtroom after deliberating for 45 minutes. The trial judge was told that the jury had been "deliberating on the question of the law pertaining to possession of the stolen property and they would like to have it explicitly read to them again." The judge read the statute and made some comment thereon. The following then took place:
"UNIDENTIFIED JUROR: But this defendant said he borrowed the car. I never heard you say one word about borrowing. You just said that 
*512 THE COURT: Well, he was charged with having the car, this stolen automobile in his possession, that the automobile was stolen and it was found in his possession. Now, that has nothing to do with borrowing a car. You have evidence that the car was stolen. I don't know of anything that denies that and it was in the possession of the defendant. That apparently is admitted, so that the car was stolen and the car was in his possession within a year from the time it was stolen. Now, the statute says this, `Under those circumstances, there is sufficient evidence to authorize conviction.' It doesn't say you have to convict. It says that constitutes sufficient evidence to authorize a conviction unless the accused show to the satisfaction of the jury either, a, that the property, considering the relations of the parties thereto and the circumstances thereof, was a gift to him, that the amount paid for the property represented its fair and reasonable value, that when he bought the property he knew or made inquiries sufficient to satisfy a reasonable man that the seller was in a regular and established business for dealing in property of the description of the property purchased, or that he received or bought the property  that when he received or bought the property he simultaneously with or before the receipt reported the transaction to the police authorities of the municipality in which he resided at the time of such receiving or buying."
From this it will be seen that the defense of having borrowed the car was eliminated from the jury's consideration. It was in the mind of at least one of the jurors that the jury might consider the borrowing of a car as a defense to the charge.
The State points out that no objection was made to the court's charge, and consequently defendant's argument comes too late, citing R.R. 4:52-1, dealing with timely objections to the charge of the court. Defendant urges that the court's charge was so erroneous as to constitute plain error, affecting his substantial rights, R.R. 1:5-1(a). "Plain error" has been defined as "legal impropriety affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Corby, 28 N.J. 106, 108 (1958).
There can be little doubt that the court's charge did prejudice the defendant by affecting his substantial rights, and that the plain error rule should be invoked. The trial *513 judge's failure to comment on his defense of borrowing the car could, after one of the jurors had specifically called his attention to the fact that he had not said "one word about borrowing," indicate to the jury that the defense was not available. Thus, even if one or more of the jurors believed defendant's story of having borrowed the car from Carlson, the jury could not have returned a not guilty verdict under the court's erroneous instructions. To remove this defense from the jury's deliberations was to deny him any defense at all under the circumstances.

II.
In the light of what we have just said, we need not consider any other arguments defendant directs to his conviction of having received stolen goods.

III.
Defendant claims error in the admission of the jail doctor's report book to rebut his claim of police brutality. He had tried to justify his abortive attempts at escape by testifying that the police had threatened and struck him, and offered in evidence by way of corroboration a bloody shirt he was wearing at the time.
In rebuttal, the State called to the stand three troopers who had been in the police barracks at the time of the alleged threats and acts of brutality, and also Charles Bottger, a jail guard at the Ocean County jail, who produced the report book in question. The book is kept by doctors attending prisoners at the jail who might require treatment. The doctor who made the entry died before trial. Under date of August 22, 1959 appears the following:
"8-22-59, Donald Laster, fell against bars and struck his nose, nose bled for a few minutes, no fracture."
Bottger identified the entry as being in the doctor's handwriting. The court was satisfied that the entry had been *514 made by the doctor in question. We see no reason to arrive at any other conclusion.
Defendant asserts that the report book "bears a similarity to hospital records," and cites several authorities for the proposition that the history contained in such records is inadmissible as hearsay. He would have us consider the book as a hospital record, and argues that the entry was not admissible. We do not agree. The report book was admissible in evidence under the Uniform Business Records as Evidence Act, N.J.S. 2A:82-34 et seq. The act defines "business" as including every "operation of an institution, whether carried on for profit or not." N.J.S. 2A:82-34. The book was a record kept in the ordinary course of operating the Ocean County jail. Its identity and the mode of its preparation, and the fact that it was made in the regular course of business at or near the time of the event, was established to the satisfaction of the court. See N.J.S. 2A:82-35.
The judgment of conviction for receiving stolen goods is reversed and remanded for a new trial. The conviction on the charge of escape is affirmed.