**STATE of Utah, Plaintiff and Respondent,**

v.

**George PAPPAS, Defendant and Appellant.**

**No. 19970.**

Supreme Court of Utah.

Aug. 28, 1985.

Stephen R. Madsen, Provo, Randine R. Salerno, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

After a jury trial, defendant George Pappas was convicted of theft in that he "received, retained, or disposed" of property of another in violation of U.C.A., 1953, § 76–6–408(1). He appeals. The sole issue is whether the property a defendant receives must *actually* be stolen.

Because numerous informants had told law enforcement agencies in the Salt Lake area that George Pappas was a well-known fence for stolen goods, the West Valley City police targeted him in a "sting" operation. The property used by the police officers was not stolen property, but only borrowed from local merchants.

Modeled after section 223.6(1) of the Model Penal Code promulgated by the American Law Institute, our section 76–6–408(1) provides:

> A person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be stolen, with a purpose to deprive the owner thereof.

Notably, the statute's language requires that the subject property be only "the property of another," but does not expressly require that it be stolen. Admittedly, this is a major departure from pre-Model Penal Code statutes that required that the property actually be stolen. This change was not merely an oversight by the drafters of the Model Penal Code. In comment 4(b) to section 223.6, they expressed an intent to alter this element of the crime of receiving. Section 223.6 comment 4(b) states:

> Stolen in Fact. There is no requirement in Section 223.6 that the property in fact have been stolen; it is sufficient if the actor believes that the property probably has been stolen. A problem has sometimes arisen under existing law as to whether property loses its "stolen" character when law enforcement officers or agents of the owner apprehend the thieves, resume control of the property, and thereafter permit the thieves to carry out a previous arrangement to deliver the property to a receiver....

> The formulation in Section 223.6 completely avoids this problem by focusing not on the abstract character of the property but on the receiver's belief that the property has probably been stolen.

(Footnote omitted.)

Many state legislatures in adopting the Model Penal Code have inserted the adjective "stolen" immediately prior to "property of another," thus negating the Model Penal Code change and making it clear that

the property actually must be stolen. *See, e.g.,* Ark.Stat.Ann. § 41–2206 (1977); Conn. Gen.Stat. § 53a–119(8) (Supp.1985); Ga. Code § 16–8–7 (1982); Ill.Rev.Stat. ch. 38, § 16–1(d) (1977); Iowa Code § 714.1(4) (1979); Mont.Code Ann. § 45–6–301(3) (1983); Neb.Rev.Stat. § 28–517 (1979); N.Y. Penal Law § 165.40 (McKinney 1975); N.D.Cent. Code § 12.1–23–02(3) (1976); Tex.Penal Code Ann. § 31.03(b)(2) (Vernon Supp.1985). On the other hand, the Utah Legislature in adopting the Model Penal Code did not negate the intent of the Code's drafters and restrict the statute's coverage to stolen property only. The Utah Criminal Code Commentary, prepared by Jay V. Barney, the reporter for Utah's adaptation and adoption of the Model Penal Code, recognizes the alternate mens rea of *"believing* that it probably has been stolen," but is otherwise silent on the character of the subject property. J. Barney, *Utah Criminal Code Commentary* 187 (1967). We are left then with the plain wording of the statute that the actor must only *believe* the property to be stolen and with the legislative intent that the property need not be stolen in fact, as articulated by section 223.6 comment 4(b).

We recognize that some jurisdictions have continued to rule that the subject property must be stolen, even though their respective legislatures have not inserted "stolen" into their receiving statutes when adopting the Model Penal Code. However, they do so relying on their pre-Model Penal Code case law, which arose under pre-Model Penal Code statutes that required that the subject property actually be stolen. These jurisdicitons fail to recognize and analyze the problem. *See, e.g., Commonwealth v. Adams,* 234 Pa.Super. 387, 338 A.2d 642 (1975) (relying on *Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119 (1971)); *Commonwealth v. Parsons,* 233 Pa.Super. 419, 335 A.2d 800 (1975) (relying on *Commonwealth v. Roth,* 169 Pa.Super. 88, 82 A.2d 710 (1951)); *In re L.L.A.,* 178 N.J.Super. 555, 429 A.2d 625 (1980) (relying on *State v. Kimbrough,* 109 N.J.Super. 57, 262 A.2d 232 (1970), and *State v. Laster,* 69 N.J.Super. 504, 174 A.2d 486 (1961)).

We have held that a defendant may be convicted of *attempted* theft by receiving in the face of an impossibility defense that the property was not in fact stolen. *State v. Powell,* Utah, 672 P.2d 96 (1983) (relying on *State v. Sommers,* Utah, 569 P.2d 1110 (1977)); *see also Darr v. People,* 193 Colo. 445, 568 P.2d 32 (1977); *People v. Rojas,* 55 Cal.2d 252, 358 P.2d 921, 10 Cal.Rptr. 465 (1961). However, we have found only three jurisdictions that have recognized and addressed the issue where the completed crime has been charged. In *State v. Niehuser,* 21 Or.App. 33, 533 P.2d 834 (1975), the Oregon Court of Appeals held that the property must be stolen. In doing so, it relied primarily on the commentary of the Oregon Criminal Law Revision Commission which implied that there was no intent to drop the requirement that the property must be stolen. As has been pointed out, the Utah commentary is silent on the point. The court in *State v. Shahan,* Del.Super. Ct., 335 A.2d 277 (1975), also held that the subject property must be stolen. It noted, "Nothing ... in the commentaries included in the drafts of the Model Penal Code indicate[s] an intent to dispense with the requirement that the goods be stolen...." *Id.* at 282. However, in section 223.6 comment 4(b) of the Model Penal Code and Commentaries (Official Draft and Revised Comments), published in 1980, the drafters unequivocally expressed and clarified their intent that the property need not be stolen.

In contrast to the Oregon and Delaware decisions, the Colorado Supreme Court, *en banc,* in *People v. Holloway,* 193 Colo. 450, 568 P.2d 29 (1977), focusing on the closely related question involving the alternate "belief" mens rea, held that the Colorado legislature clearly "intended to broaden the crime of theft by receiving to include the purchase of property, whether stolen or not, which the purchaser believes is stolen." Later, in *People v. Adler,* Colo., 629 P.2d 569 (1981), that decision was reaffirmed. This interpretation by the Colorado court is in agreement with comment 4(b)'s statement that section 223.6 of the Model Penal Code does not focus on the

"abstract character of the property but on the receiver's belief that the property has probably been stolen." It is also supported in other legal writing. In 2 *Encyclopedia of Crime and Justice* (S. Kadish ed. 1983) at page 792, it states, "Perhaps the more sensible approach [to the problems posed by the character of the property] is to abandon altogether the requirement that the property received be stolen property. The Model Penal Code (§ 223.6) makes such a suggestion by requiring only that the property received be that 'of another'...." *See* R. Perkins & R. Boyce, *Criminal Law* 402–03 (3d ed. 1982), noting that the "holding [of *People v. Holloway*] is quite logical."

Modern criminal jurisprudence has a very clear bias toward punishing an actor's intent instead of simply punishing the manifest criminality or outwardly criminal act. Our Legislature has expressed that its concern is directed more toward subjective criminality than toward manifest criminality by stating in U.C.A., 1953, § 76–1–104(2):

The provisions of this code shall be construed in accordance with these general purposes.

. . . .

(2) Define adequately the conduct and mental state which constitute each offense and *safeguard conduct that is without fault from condemnation as criminal.*

. . . .

(Emphasis added.) Section 76–2–101 expresses the same legislative purpose:

No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly or with criminal negligence with respect to each element of the offense as the definition of the offense requires;

. . . .

*See State v. Elton,* Utah, 680 P.2d 727 (1984). Sections 76–1–104 and 76–2–101 demonstrate a legislative desire *not* to punish manifestly criminal acts that are not accompanied by a subjective mental state

to do wrong. The converse is also true. We see the Legislature's desire to punish subjective criminality so long as it is linked with some otherwise harmless corroborative act that demonstrates the firmness of the actor's criminal resolve. Examples of this are U.C.A., 1953, § 76–4–101(3)(b), which denies an impossibility defense to an attempt charge, and U.C.A., 1953, § 76–2–304(1), which states that a mistake of fact is a defense only if it disproves the culpable *mental state.* Likewise, in the theft by receiving statute the Legislature expressed its desire to prohibit subjective criminality (the culpable mental state of desiring to receive stolen property) when it is accompanied by an otherwise harmless act (receiving property that is not actually stolen). The interpretation that the subject property need not be stolen and that the focus is on the actor's mental state is in harmony with the modern trend of criminal jurisprudence. *See generally* G. Fletcher, *Rethinking Criminal Law* ch. 3 (1978). Fletcher states at page 234 that there is evidence of a "general drift toward the view that an intent to harm is the core of criminal conduct" and that "[t]he resonance of subjective criminality is surely the dominant theme of contemporary criminal jurisprudence."

Defendant claims that our previous cases have already held that the subject property must actually be stolen. Two of the four cases he cites to support his proposition, *State v. Powell,* Utah, 672 P.2d 96 (1983), and *State v. Sommers,* Utah, 569 P.2d 1110 (1977), dealt with attempt convictions where the defendants unsuccessfully argued impossibility defenses. Neither even hints that the property must be stolen if the completed crime is charged. In another case, *State v. Lamm,* Utah, 606 P.2d 229 (1980), we stated in dicta that under the latter portion of section 76–6–408(1), *i.e.,* "concealing ... any such property from the owner, *knowing the property to be stolen*" (emphasis added), an element of the crime was that "property belonging to another has been stolen." *Lamm,* at 231. However, in *Lamm* the property was actually

stolen and the issue addressed in the instant case was not raised. More importantly, the latter portion of the statute under which Lamm was convicted requires *knowledge* that the property is stolen, not simply belief. It would be impossible to have knowledge that property was stolen if in fact it was not stolen. However, in the instant case, Pappas was charged under the first part of the statute, which only requires that the defendant believe the property has probably been stolen.

Lastly, defendant cites *State v. Murphy,* Utah, 617 P.2d 399 (1980), as controlling on the issue. Again, the issue was not raised in *Murphy,* and the statements relied upon by defendant are merely dicta. Additionally, *Murphy* was a plurality opinion which did not command a majority, and there were two dissents. The plurality's opinions reversed the conviction either because the State had failed to show that Murphy had received the property "with a purpose to deprive the owner thereof" or because the State failed to show that Murphy either knew or *believed* that the property had been stolen. The dicta was in the main opinion, but a majority of the court did not rule upon the requisite nature of the subject property. None of the Utah cases cited by defendant are controlling on the issue, and we have not found any in our research.

▇▇ In reality, this is the first occasion that the issue of the character of the subject property has arisen and our first opportunity to speak squarely to it. Based on the clear legislative intent expressed in Model Penal Code § 223.6 comment 4(b) and on the other authorities cited, we hold that the subject property need not be stolen. We note that section 76-6-408(1) is not merely an attempt by the State to punish persons for their thoughts. Unlike the attempt statute, U.C.A., 1953, § 76-4-101, which proscribes the union of the culpable mental state and *any* substantial step toward the commission of the offense that strongly corroborates the actor's intent, the receiving statute proscribes a higher degree of misconduct. It requires the union of the culpable mental state and *all* the steps within the actor's power to complete the intended theft. Although the change in the statute offends common-law thinking, the Legislature has abolished common-law crimes, U.C.A., 1953, § 76-1-105, and is free to proscribe this activity regardless of the nature of the subject property. Defendant asserts no constitutional right to receive property he believes to be stolen.

By requiring the State to prove only that a defendant received property which he believed to be stolen, there is no increased danger of punishing persons society would not want to punish. 2 S. Kadish, *supra,* at 792. The receiving statute's greatest salutary effect is the tool it provides to law enforcement agencies to use to catch known fences. Indeed, Pappas was targeted for this sting operation because of the wealth of evidence the police had gathered which indicated that he was one of the better-known fences in the Salt Lake Valley. Thieves would not steal if there were no buyers for their loot. One study estimates that the existence of these buyers inspires at least 95 percent of the theft in the United States. *Id.* at 789. Fencing is a $16 billion-a-year industry in this nation. *Id.* at 790. On the other hand, the receiving statute opens the door to abusive police practices directed toward those not otherwise ready to commit the offense. However, our liberal interpretation of the entrapment defense statute, U.C.A., 1953, § 76-2-303, provides safeguards for those individuals with whom the police make chance contacts and actively induce to commit the offense. *See State v. Sprague,* Utah, 680 P.2d 404 (1984); *State v. Kourbelas,* Utah, 621 P.2d 1238 (1980) (drug trafficking convictions reversed where undercover officers had no evidence that defendants either dealt in or used illicit drugs and officers made repeated requests to purchase illicit drugs); *see also* 2 S. Kadish, *supra,* at 790.

We accordingly affirm defendant's conviction.

HALL, C.J., and DURHAM and ZIM-MERMAN, J., concur.

STEWART, J., concurs in the result.