STATE of Utah, Plaintiff and
Respondent,

v.

Rodney James RAMON, Defendant
and Appellant.

STATE of Utah, Plaintiff and
Respondent,

v.

Minnette M. RIEDMAN, Defendant
and Appellant.

Nos. 860005–CA, 860013–CA.

Court of Appeals of Utah.

May 12, 1987.

Rehearing Denied July 13, 1987.

Martin Verhoef, Barber, Verhoef & Yocom, Salt Lake City, for Ramon and Riedman.

David L. Wilkinson, Atty. Gen., Kimberly Hornak, Asst. Atty. Gen., for the State.

Before JACKSON, ORME and BENCH, JJ.

## OPINION

BENCH, Judge:

Defendants Rodney James Ramon and Minnette M. Riedman appeal their separate convictions of theft by receiving stolen property. Utah Code Ann. § 76–6–408(1)(1986). Because the cases involve the same facts and the same dispositive issue, we consolidate the cases, sua sponte, and reverse both convictions.

On December 8, 1983, George Linam and Sam Mackie burglarized Western Sheet Metal and stole one eighteen inch wide coil of copper sheet, which weighed about 2,500 pounds, and twenty-five eight feet by fifteen inch fabricated panels. The next morning, December 9, as Ralph Montrone, the owner of Western Sheet Metal, and his employees arrived at work, they discovered the burglary. After a quick inventory, Montrone estimated the stolen property to be three coils of copper sheet, totaling approximately 10,000 pounds in weight, and 500 pounds of pie-shaped scrap copper. Montrone asked his daughter and employee, Laura, to telephone all the salvage metal dealers in Salt Lake County and notify them about the burglary. Sometime between 8:30 and 9:30 that morning, Laura called co-defendant Riedman, office manager at Industrial Salvage. Laura told Riedman about the burglary and described the property according to her father's instructions. Riedman took notes of the stolen property as described by Laura.

At approximately 9:30 a.m., Linam and Mackie arrived at Industrial Salvage with the stolen copper. They drove through the front gate, past the front office where Riedman worked, and directly to the non-ferrous metal shed in the back of the yard. They unloaded the copper, and Bob North, an employee of Industrial, weighed it and filled out a yard receipt. On the receipt, North described the copper as "1653 pounds of #3 light copper." Linam and Mackie took the receipt to the front office and presented it to Riedman. As the two men entered the office, Roger Valentine, an employee at Western Sheet Metal, also entered the office. Riedman paid Linam and Mackie $559.02 in cash for the copper. As the two men left, Valentine wrote down the license plate number of their truck. Valentine then identified himself to Riedman. Riedman told him she had received Laura's phone call earlier that morning. Valentine asked Riedman if she had purchased any copper that morning. Riedman replied no. Defendant Ramon, the owner-manager of Industrial Salvage, entered the office at that time and told Valentine they did not see that kind of copper too often.

As Valentine left the office, he noticed North in the non-ferrous metal shed carrying a panel Valentine recognized as belonging to Western Sheet Metal. He left the yard, located a public telephone, and contacted Montrone.

Shortly thereafter, Montrone and another employee, Joe Sudbury, joined Valentine at the entrance of Industrial Salvage. They entered the office and again asked Riedman if she had purchased any copper that day. Riedman again replied in the negative. Montrone then asked if they could look around the yard. Riedman explained that they would need to talk to Ramon. The men went out in the yard to ask Ramon. He asked them to wait as he was busy with a customer. Twenty minutes later, Ramon escorted Montrone and Valentine through the yard. They entered the non-ferrous metal shed and asked North if he had received any copper that morning. North showed them a box of scrap pieces with white paint on them. Montrone and Valentine then left the yard.

Later that afternoon, Montrone's wife and other employees at Western noticed a box near the west gate of Industrial Salvage. The box was covered with a burlap cloth, but sticking out of the box were fabricated pieces of copper resembling the stolen panels. They contacted the Salt Lake City Police Department.

Two detectives obtained an investigative subpoena to seize the sales records of Industrial Salvage for that day. At about 2:30 p.m., the detectives and an officer arrived at the site. As Ramon observed the policemen arrive, he asked Riedman for the sales book and put it away in a storage compartment in his office. He told Riedman to contact his attorney and to make up a story for the missing sales book. Ramon then went out into the yard. The detectives entered the office, showed Riedman the subpoena, and asked for the sales book for that day. Riedman told them she did not know where the book was, and suggested "the vigilantes," referring to Western Sheet Metal employees, had taken it. She called Ramon into the office, and he gave the detectives the same response.

The detectives explained to Ramon the subpoena did not give them the right to search the yard and asked for his permission to do so. Ramon consented. The detectives walked through the non-ferrous metal shed and to the back west gate where the box Western employees had identified was located. Montrone, standing outside the gate, identified the contents of the box as his. The detectives read Ramon his Miranda rights and asked him about the box. He said he knew nothing about it. The detectives told him they were going to seize the box.

By the time the men returned to the front office, Riedman had contacted Ramon's attorney. After conversing with his attorney, Ramon turned the sales book over to the detectives and Riedman told them she remembered purchasing about 1,000 pounds of copper that morning.

Ramon, Riedman, and North were charged, in an information filed on December 20, 1983, with the crime of Theft by Receiving in violation of Utah Code Ann. § 76–6–408(1) (1986). The information alleged:

> THEFT BY RECEIVING, a Second Degree Felony, at 1532 Industrial Road, in Salt Lake County, State of Utah, on or about December 9, 1983, in violation of Title 76, Chapter 6, Section 408, Utah Code Annotated, 1953 as amended, in that the defendants, RODNEY JAMES RAMON, MINETTE M. RIEDMAN and BOBBY DALE NORTH, as parties to the offense, received, retained, or disposed of the property of Western Sheet Metal knowing that it had been stolen, or believing that it probably had been stolen, with a purpose to deprive the owner thereof, and that the value of said property exceeded $1,000.00.

The State filed an amended information on May 16, 1984, which added the following emphasized language:

> THEFT BY RECEIVING, a Second Degree Felony, at 1532 Industrial Road, in Salt Lake County, State of Utah, on or about December 9, 1983, in violation of Title 76, Chapter 6, Section 408, Utah Code Annotated, 1953 as amended, in that the defendants, RODNEY JAMES RAMON, MINETTE M. RIEDMAN and BOBBY DALE NORTH, as parties to the offense, received, retained, or disposed of the property of Western Sheet Metal knowing that it had been stolen, or believing that it probably had been stolen, *or concealed, withheld, or aided in concealing or withholding any such property from the owner, knowing the property to be stolen,* with a purpose to deprive the owner thereof, and that the value of said property exceeded $1,000.00. (Emphasis added.)

Defendants received notice of the proposed amendment on May 17. On May 23, defendants filed a motion for bill of particulars asking the court to require the State to specify which theory of guilt it would rely upon at trial. The court summarily denied the motion.

Defendants Ramon and Riedman were jointly tried by a jury and before the Honorable Jay E. Banks, Third Judicial District Court, on June 19–22, 1984. On the first day of trial, after the jury had been selected, sworn, and admonished, the State formally moved to amend the information. Over defendants' objection, the court granted the State's motion. Defendants entered pleas of not guilty to the new information and the trial proceeded that afternoon. The jury found defendants guilty as charged on June 22, 1984. On August 22, the court denied defendant Riedman's motion in arrest of judgment and sentenced both defendants to indeterminate terms of not less than one year or more than fifteen years at the Utah State Prison. The court stayed the sentences and placed defendants on probation under certain terms and conditions. Defendants filed their notices of appeal that same day.

On appeal, defendants contend the trial court erred in allowing the State to amend the information on the day of trial as the amendment charged an additional or different offense and prejudiced their substantial rights.

Utah R.Crim.P. 4(d), Utah Code Ann. § 77–35–4(d) (1982), provides:

The court may permit an indictment or information to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. After verdict, an indictment or information may be amended so as to state the offense with such particularity as to bar a subsequent prosecution for the same offense upon the same set of facts.

■ Under the Rule, the trial court may allow an information to be amended if two conditions are met: (1) no additional or different offense is charged, and (2) the substantial rights of the defendants are not prejudiced.

In general, these two conditions are met where the proposed amendment to an information merely recites language of the statute originally charged. *State v. Peterson,* 681 P.2d 1210, 1220–21 (Utah 1984), (citing *State v. Ricci,* 655 P.2d 690, 691 (Utah 1982)). In *Peterson,* the defendant was charged with aggravated assault under Utah Code Ann. § 76–5–103(1)(a)(1978). The proposed amendment, granted on the second day of trial, substituted subsection (b), "... uses a deadly weapon or such means or force likely to produce death or serious bodily injury," for subsection (a)," ... intentionally causes serious bodily injury to another," as the basis of the charges. The offense, aggravated assault, remained the same. The Court found since "the amendment to the information did not change the basic charge," no substantial rights were prejudiced and affirmed the trial court's ruling. *Id.* at 1221.

The generality of *Peterson* presupposes the charging statute contains a single offense. The rule does not apply in the instant case since the statute under which defendants were charged contains two distinct crimes.

In *Whitwell v. State,* 520 S.W.2d 338, 344 (Tenn.1975), the Tennessee Supreme Court held, "[c]oncealing stolen property is an offense distinct from and independent of receiving stolen property." *See also Brewer v. State,* 554 P.2d 18, 21 (Okl.Cr.1976); *State v. Doster,* 247 Or. 336, 427 P.2d 413,

416 (1967). From our analysis of Utah case law, we conclude that to also be the law in this jurisdiction.

In *State v. Murphy,* 617 P.2d 399, 401 (Utah 1980), the defendant was charged with theft by receiving in violation of section 76–6–408(1). The Utah Supreme Court outlined the basic elements of theft by receiving stolen property. Those elements are:

(1) property belonging to another has been stolen;

(2) the defendant received, retained or disposed of the stolen property;

(3) at the time of receiving, retaining or disposing of the property the defendant knew or believed the property was stolen; and

(4) the defendant acted purposely to deprive the owner of the possession of the property.

In *State v. Lamm,* 606 P.2d 229, 231 (Utah 1980), the defendant was also charged under section 76–6–408(1). However, after a review of the facts, the Supreme Court held "[t]he facts of the present case fall within the latter portion of this provision, i.e., concealing or aiding in the concealment of stolen property." The Court then outlined the basic elements of theft by concealing or aiding in the concealment of stolen property. Those elements are:

(1) property belonging to another has been stolen;

(2) the defendant aided in concealing this property;

(3) at the time he so aided in concealing it he knew the item had been stolen; and

(4) his purpose in acting was to deprive the owner thereof of possession.

The Court clearly lists separate elements for separate crimes. Of particular note are the second elements listed in each case. In *Murphy,* the prosecution had to prove defendant received, retained, or disposed of stolen property. In *Lamm,* the prosecution had to prove defendant aided in concealing the stolen property. The third elements are also different. In *Murphy,* the prosecution was only required to prove de-

fendant believed the property was stolen while in *Lamm,* the prosecution had to prove defendant knew the property was stolen.

■ Although not apparent in *Murphy* and *Lamm,* there is a difference even in the first element listed for the two crimes. In *State v. Pappas,* 705 P.2d 1169 (Utah 1985), the Court specified yet another distinction between receiving stolen property and concealing stolen property. The Court stated that for the latter part of the statute (concealing), the property must in fact be stolen. The Court held, however, that for the first part of the statute (receiving), the subject property need not be stolen since the defendant might only believe the property has been stolen. In so holding, the Court criticized *Murphy* but only insofar as the earlier case suggested that even for theft by receiving, the property must actually be stolen.

In *Murphy, Lamm,* and later *Pappas,* the Utah Supreme Court has clearly held that receiving stolen property is a crime separate and distinct from concealing stolen property.

■ The dissent suggests the rationale behind finding two separate offenses under section 76–6–408(1) can also be used to find six separate offenses in the same statute. Such is not the case. The statute, as drafted by the legislature, is divided into two separate portions or offenses: "A person commits theft if he receives, retains, or disposes of the property of another ... *or* who conceals, sells, [or] withholds ... any such property...." (Emphasis added.) Both offenses contain a triplet of culpable conducts, but each type of conduct is not a separate offense, as evidenced by the second element listed above in *Murphy.*

■ Because the amendment charged an additional or different offense than that originally charged, defendants' convictions are reversed. In light of this decision, we do not address defendant Riedman's claim of insufficiency of the evidence to support her conviction.

JACKSON, Judge (concurring):

The opinions in this case demonstrate that Utah Code Ann. § 76–6–408(1) (1986), modeled after section 223.6(1) of the Model Penal Code, is not artfully drafted. The Utah Supreme Court has indentified two separate offenses in the statute. *State v. Pappas,* 705 P.2d 1169 (Utah 1985); *State v. Lamm,* 606 P.2d 229, 231 (Utah 1980); *State v. Murphy,* 617 P.2d 399, 401 (Utah 1980). It is our function to follow those decisions until the Court rules otherwise, or until the legislature revises the statute.

ORME, Judge (dissenting):

I agree with the basic approach employed by the majority. I dissent only because I do not believe that in the posture of this case "receiving" stolen property is a crime distinct from "concealing" stolen property, and because I believe that *State v. Peterson,* 681 P.2d 1210 (Utah 1984), is controlling.

The statute in question, Utah Code Ann. § 76–6–408(1) (1986), defines as constituting the crime of *theft* a number of closely related post-theft activities sometimes collectively referred to as "receiving" stolen property. These activities are manifestations of a single wrong condemned in law, namely that of dealing with stolen property, knowing or believing it was stolen, with the purpose of depriving the owner of the property. I believe the statute defines a single crime—theft in violation of the statute. That § 76–6–408(1) defines a single crime is a conclusion supported by Utah Code Ann. § 76–1–601(6) (1978), which equates the term "offense" with "a violation of any penal statute of this state."

If the majority is correct that this single statute defines more than one crime, I see no reason why it defines only two, "receiving" and "concealing," since several other methods of dealing with stolen property are mentioned. Indeed, under the majority's logic the run-of-the-mill "fence" might be guilty of a multitude of "crimes" every time he effected a sale of a single item of stolen property. He would be guilty of one crime when he received the stolen item. He would be guilty of a second if he retained it, guilty of a third if that retention took the form of concealment, and neces-

sarily guilty of a fourth since that retention, whether in the form of concealment or not, would constitute the withholding of property. He would be guilty of a fifth crime when he disposed of the property and of a sixth if the disposal was in the form of a sale. We would rightfully have little patience with a prosecutor who brought a six-count information against such a perpetrator in the routine case. Our rationale would be that the fence had really committed only one crime, namely theft or "receiving" in violation of § 76–6–408(1).

The majority's conclusion that the statute describes more than one crime is mainly premised on the cases of *State v. Murphy*, 617 P.2d 399 (Utah 1980) and *State v. Lamm*, 606 P.2d 229 (Utah 1980). I concede those cases, by providing slightly different itemizations of "elements," are not altogether inconsistent with the majority's conclusion. However, I believe those cases are fully consistent with my conclusion that the statute defines a single crime, one which admittedly can be established by alternative avenues of proof. When both cases are read and considered, there is no escaping the conclusion that Murphy's crime would have been "theft" in violation of § 76–6–408(1), as was Lamm's.[1] Nor does the embellishment made by *State v. Pappas*, 705 P.2d 1169 (Utah 1985), in which the majority takes further comfort, require a different conclusion. In practical terms, *Pappas* is irrelevant to this case since the property in question here was clearly stolen. Insofar as *Pappas* bears indirectly on our analysis, it is quite neutral. *Pappas* recognizes that several of the avenues of proof available to the prosecution under § 76–6–408(1) are appropriate

where property has not actually been stolen but where the perpetrator believes it has been, as in the case of the now familiar "sting" operation. Nothing in *Pappas* elevates these alternative avenues of proof to distinct offenses. When the dust settles, it is clear that Pappas's crime was also "theft" in violation of § 76–6–408(1).

While this aspect of my disagreement with the majority may seem largely semantical, I believe that in all events the case is controlled by *State v. Peterson*, 681 P.2d 1210 (Utah 1984). In *Peterson*, the amended information included an additional phrase from the aggravated assault statute, the statute under which defendant was originally charged. In the instant case, the amendment did no more than add additional language from the "receiving" statute under which defendants were originally charged. In *Peterson*, as here, "the amendment to the information did not change the basic charge." *Id.* at 1221. In *Peterson*, as here, defendants were charged by title and section, "which certainly apprised [them] of the statutory offense." *Id.* It is clear to me, semantics aside, that if the amendment in *Peterson* was appropriate, so was the amendment in this case.

As no actual prejudice resulted from permitting the amendment, I would affirm defendant Ramon's conviction. I also believe there is sufficient evidence in the record to support Riedman's conviction, and would therefore also affirm her conviction.

---

**1.** It is true that Lamm's wrongful dealing with stolen property was in the form of aiding in its concealment while Murphy's allegedly wrongful dealing with stolen property was in the form of retaining it, although the prosecution failed to prove the charge against Murphy. Unlike the majority, I do not see a world of difference between the first phrase in the statute, what the majority refers to as an offense containing "a triplet of culpable conduct," and the second phrase/triplet. On the contrary, I see considerable overlap between them. "Retaining," for example, is in the first triplet, while "concealing" and "withholding," which I regard as mere varieties of retaining, are in the second. Mean-

while, "disposing" of stolen property is in the first triplet while "selling," simply a disposal in exchange for valuable consideration, is grouped with concealing and withholding in the second.

Indeed, if the various "culpable conducts" in § 76–6–408(1) were to be logically grouped into separate crimes, receiving stolen property would be one; concealing, retaining, or otherwise withholding it from its owner would be a second; and selling or otherwise disposing of it would be the third. While such a scheme even makes some sense, our Legislature has chosen to lump all of these culpable conducts into the single statutory offense set forth in § 76–6–408(1).