STATE of Utah, Plaintiff and Respondent,

v.

Greg Phillip CASIAS, aka Greg Phil Casias, aka John Paul Sanchez, Defendant and Appellant.

No. 870585–CA.

Court of Appeals of Utah.

April 14, 1989.

Elliott Levine, West Valley City, for defendant and appellant.

R. Paul Van Dam and Elizabeth Holbrook, Salt Lake City, for plaintiff and respondent.

## OPINION

Before BILLINGS, JACKSON and ORME, JJ.

BILLINGS, Judge:

Defendant Greg Phillip Casias was convicted by a jury of burglary in violation of Utah Code Ann. § 76-6-202(1) (1978), and two counts of second degree theft in violation of Utah Code Ann. § 76-6-404 (1978). Casias appeals from his convictions claiming the trial court erred in allowing 1) photocopies of his palm prints into evidence, and 2) the State to charge him for two counts of theft under § 76-6-404, theft of a firearm, a second degree felony under § 76-6-412(1)(a)(ii), and theft of property valued in excess of $1,000, a second degree felony under § 76-6-412(1)(a)(i), which arose from the same criminal episode. Although we affirm Casias's convictions for burglary and one count of second degree theft, we find submitting two counts of theft to the jury and the resulting convictions thereon was error. We, therefore, remand the matter to the trial court to vacate one of the theft convictions.

## FACTS

On May 14, 1987, a private residence in Summit Park, Utah, was burglarized. Items reported missing included personal property worth over $1,000 and a .25-caliber automatic pistol. During the investigation, police officers found a beer can in the bedroom of the homeowner's daughter. The beer can was sent to the state crime lab to recover latent finger-prints. The fingerprint expert at the lab recovered a left palm print and several fingerprints from the can.

On May 28, 1987, the Salt Lake County jailer took palm prints from Casias, who was a suspect in the burglary and was in jail when his prints were requested. The cards on which the prints were taken contained the jailer's signature and Casias's typed identification. The right palm print was taken on the front side of a fingerprint card while the left palm print was taken on the back of a separate card. The jailer signed the cards and witnessed Casias sign the cards as well. Photocopies of the palm print cards were sent to Detective Offret, who was in charge of the investigation, and he in turn sent the photocopies to the state crime lab. An expert matched the prints taken from the beer can with Casias's photocopied palm prints.

At trial, the jailer testified that the exhibits introduced by the State representing Casias's palm prints were copies of the prints he had taken. Casias objected to admitting the photocopied palm prints into evidence on the grounds that the palm print match was based on what Casias claimed was an inadmissible photocopy. The trial court overruled the objection, and allowed the photocopies of Casias's palm prints into evidence. Casias was subsequently convicted of burglary, theft of a firearm, and theft of property valued in excess of $1,000, all second degree felonies. The trial judge sentenced Casias to concurrent sentences for these offenses.

Two issues are presented on appeal. First, did the trial court err in allowing photocopies of Casias's palm prints into evidence? Second, did the trial court err in treating theft of property valued in excess of $1,000 and theft of a firearm as two separate second degree felony offenses under Utah Code Ann. § 76-6-412 (1978)?

## ADMISSION OF PHOTOCOPIED PALM PRINTS

■ Casias argues the photocopies are inadmissible under Rule 1002 of the Utah

Rules of Evidence.[1] We disagree, and find the photocopies were properly admitted under Rule 1003 which provides:

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Utah R.Evid. 1003.

In the absence of an abuse of discretion, the trial court's ruling on the admissibility of evidence will not be disturbed. *See, e.g., State v. Eagle Book, Inc.*, 583 P.2d 73, 75 (Utah 1978); *State v. Tuggle*, 28 Utah 2d 284, 501 P.2d 636, 637 (1972).

Courts routinely admit photocopies of evidentiary materials, including fingerprints, into evidence so long as the materials are authenticated, identifiable, satisfy chain of custody requirements, and otherwise comply with the rules of evidence. *See generally Riley v. Sigler*, 320 F.Supp. 96, 99 (D.Neb.1970), *aff'd*, 437 F.2d 258 (8th Cir. 1971) (court properly admitted copies of fingerprints into evidence taken two years earlier even though the fingerprint card had been altered to the extent that most identifying marks had been removed); *State v. Tuggle*, 501 P.2d at 637–38 (photocopies of a car title were properly admitted into evidence even though the original title was not offered and the custodian of the records was unable to testify).

Casias argues it was error for the trial court to admit a photocopy of his palm prints into evidence because there was a genuine question concerning the authenticity of the original palm prints. The record, however, does not support his claim. The photocopied palm prints were identified by the jailer as the only palm prints he had ever taken in his career. Furthermore, Casias does not contend that the photocopies are misleading, unreliable, or in some way defective. Casias simply asserts that the duplicates should not have been admitted because the original was not available to compare with the photocopy. We are persuaded the photocopies of Casias's palm prints were sufficiently authenticated and reliable and, therefore, properly admitted into evidence.

## THEFT CONVICTIONS

Casias next contends the trial court erred in allowing the State to charge him with two counts of second degree theft. Specifically, Casias was charged in the information with theft of a firearm in violation of Utah Code Ann. § 76–6–404 (1978), punishable as a second degree felony under Utah Code Ann. § 76–6–412(1)(a)(ii) (1978), and theft of property exceeding $1,000 in violation of § 76–6–404, a second degree felony under § 76–6–412(1)(a)(i). Casias claims the trial court erred in interpreting § 76–6–412 as delineating separate and independently chargeable offenses. We agree.

Under Utah's criminal code, "[a] person commits theft if he obtains or exercises unauthorized control over the *property* of another with a purpose to deprive him thereof." Utah Code Ann. § 76–6–404 (1978) (emphasis added).[2] Section 76–6–412(1) provides, with our emphasis, "[t]heft of property and services as provided in this chapter shall be *punishable* as follows:

(a) As a felony of the second degree if: (i) The value of the property or services exceeds $1000; or (ii) The property stolen is a firearm....

It is undisputed that Casias stole a firearm and property valued in excess of $1,000, excluding the firearm, during the same criminal episode. Additionally, under Utah Code Ann. § 76–1–402 (1978), a criminal defendant may be prosecuted "for all

---

1. Rule 1002 provides:
   To prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required, except as otherwise provided in these rules or by other rules adopted by the Supreme Court of this State or by Statute.

2. In 1973, the Utah Legislature enacted a "consolidated" theft statute, Utah Code Ann. §§ 76–6–401 to –412, which "subsume[d] offenses that had been known under prior Utah law as larceny, embezzlement, extortion, false pretenses, and receiving stolen property." Cox, *Utah's New Penal Code: Theft*, 1973 Utah L.Rev. 718–772. *See also* Utah Code Ann. § 76–6–403 (1978). Utah's consolidated theft statute is patterned after the Model Penal Code. *See* Cox, *supra* at 740–41.

*separate offenses* arising out of a single criminal episode." [3] (emphasis added). Thus, the State, relying on § 76–6–412(1), argues Casias committed two separate and distinct theft offenses because each count required proof of a different element, specifically, the character of the item stolen.[4] The State's position, however, is contrary to Utah authority. In *State v. Branch*, 743 P.2d 1187, 1192 (Utah 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988), the Utah Supreme Court concluded "[s]ection 76–6–412(a)(a)(i) [sic] *does not outline the elements of the crime of theft;* it simply categorizes theft for sentencing purposes into various degrees of felonies and misdemeanors." (emphasis added). *Cf. State v. Porter,* 705 P.2d 1174, 1178 (Utah 1985) ("the *character* of the building is important only in determining whether the burglary is a felony of the second or third degree").

Moreover, the State's reliance on *State v. Suarez,* 736 P.2d 1040 (Utah Ct.App.1987), is misguided. *Suarez* involved the crime of forcible sexual abuse, Utah Code Ann. § 76–5–404(1), as it was defined prior to being amended in 1983.[5] The court in *Suarez* held that the defendant committed two separate statutory offenses, each requiring proof of different elements notwithstanding that the offenses were set forth in the same statutory subsection. *Suarez,* 736 P.2d at 1042. The State analogizes § 76–5–404(1) to § 76–6–412(1) claiming the latter delineates several substantive crimes of theft depending on the character of the item stolen. As stated in *Branch,* however, § 76–6–412 is not a charging statute but rather, it merely "classifies" theft offenses "for sentencing purposes."

The remaining cases relied on by the State are similarly distinguishable as they all involved separate charging statutory provisions which clearly required the State to prove different elements. *See, e.g.,*

*State v. O'Brien,* 721 P.2d 896 (Utah 1986) (defendants properly convicted under different statutes of aggravated kidnapping, aggravated burglary, aggravated robbery, and theft of a firearm arising from same criminal episode); *State v. Smathers,* 602 P.2d 708, 710 (Utah 1979) (conduct prohibited under the rape statute is not the same conduct prohibited under the aggravated sexual assault statute).

Based on the foregoing, we conclude Casias committed one theft offense under Utah Code Ann. § 76–6–404 (1978), punishable as a second degree felony under § 76–6–412 due to the character of the property stolen. Accordingly, the trial court improperly permitted the State to charge Casias with two separate counts of second degree theft.

■ The trial court sentenced Casias to concurrent sentences for the two theft convictions. Thus, the State argues the trial court's error is harmless. However, due to the many adverse collateral consequences of multiple felony convictions, we remand the case to the trial court to vacate one of the erroneous theft convictions. *See Villafranca v. State,* 194 Colo. 472, 573 P.2d 540, 542–43 (1978), *overruling State v. Morgan,* 189 Colo. 256, 539 P.2d 130 (1975).

In sum, we hold the trial court properly allowed photocopies of Casias's palm prints into evidence and Casias's convictions of burglary and theft are affirmed, except insofar as we vacate the second theft conviction, and remand to the trial court for further proceedings consistent with this opinion.

JACKSON and ORME, JJ., concur.

---

**3.** The term "offense" as used in Utah's criminal code is defined as "a violation of any penal statute of this state." Utah Code Ann. § 76–1–601(6) (1978).

**4.** This court has previously wrestled, in the context of a theft offense, with the question of whether alternative statutory criteria constitute elements of distinguishable offenses or merely

alternative methods of proving a single offense. *Compare State v. Ramon,* 736 P.2d 1059, 1062–63 (Utah Ct.App.1987) *with id.* at 1063–64 (Orme, J., dissenting).

**5.** *Compare Suarez,* 736 P.2d at 1042 *with* § 76–5–404(1) (1988) compiler's notes (setting forth the recent changes to the provision).